# State, *ex rel.* Medical College of Alabama *v.* Sowell.

### *Petition for Mandamus.*

1   *Constitutional law; Medical College of Alabama; not under absolute control of the State; appropriation therefor should be passed by vote of two-thirds of the members of each house.*— The Medical College of Alabama is not an educational institution under the absolute control of the State, within the meaning of section 73 of the Constitution; and, therefore, an act of the legislature making an appropriation to said institution is invalid, unless it is passed by a vote of two-thirds of all the members elected to each house of the legislature.

APPEAL from the City Court of Montgomery.

Heard before the Hon. A. D. SAYRE.

The proceedings in this case were had upon a petition filed by the State of Alabama, on the relation of the Medical College of Alabama, addressed to the judge of the

City Court of Montgomery, in which it was averred that the Medical College of Alabama was incorporated by an act of the general assembly of Alabama creating said corporation, establishing trustees therefor, providing for the management and discipline of the same and establishing the same as a department of the University of Alabama, and appropriating moneys for the purchase of the necessary lots and the erection of the necessary buildings. That said corporation has since, from time to time, been aided and sustained by appropriations made by the general assembly out of the public moneys of the State, and that in the same there is no private interest or ownership whatever.

It was further averred in the petition, that, at the session of the legislature of Alabama in the year 1903, there was introduced in the house of representatives a certain bill to appropriate the sum of $20,000, to aid in the repairs, extension and improvement of the buildings and equipment of the Medical College of Alabama. That this bill was passed by the house of representatives and by the senate of the legislature, and was duly signed by the speaker of the house and the president of the senate, and was then presented and delivered to the governor of Alabama, on Saturday the 26th day of September, 1903, for his approval. That said bill was never returned by the governor to the legislature; that the legislature did not adjourn *sine die* within six days, Sundays excepted, after the said bill had been presented and delivered to the governor; and that the legislature adjourned on the 3rd day of October, 1903. That, therefore, said bill, by its passage through the said two houses of the legislature and its delivery to the governor for six full days, Sundays excepted, and not being returned by the governor with his veto, became a law.

It was then further averred in the petition that, by the provisions of the said bill, an appropriation of $20,000 was made in favor of the Medical College of Alabama, and it was provided that said sum should be drawn out in installments on warrants of the auditor upon the state treasurer. That, upon the petitioner making request of the auditor to draw his warrants in its favor upon the state treasurer, in compliance with the provi-

sions of said act, the auditor declined and refused to do so.

The prayer of the petition was that a writ of *mandamus* issue, directed to Thomas L. Sowell, Auditor, commanding him to issue his warrants upon the state treasurer for the moneys appropriated to the petitioner, under the provisions of said act.

The respondent filed the following answer to the petition:

1. "The defendant, for answer to the petition, saith that the allegations of the petition are untrue."

2. "The defendant, for further answer to the petition, saith that the Medical College of Alabama is not an educational institution under the absolute control of the State, and that the bill exhibited with the petition did not pass by a vote of two-thirds of all the members elected to each house of the legislature of Alabama."

3. "The defendant, for further answer to the petition, saith that the bill, a copy of which is attached as an exhibit to petition, was presented to the Governor on Saturday, September 26, 1903; that the session of the Legislature at which the bill passed the two Houses finally adjourned on Saturday, October 3, 1903: that between the said dates of September 26, 1903, and October 3, 1903, neither House of the Legislature was in session six days, Sunday excepted, and September 26 and October 3 included."

To this answer or return of the respondent, the petitioner demurred upon the following grounds: 1. "That by the act incorporating the petitioner, it was made an educational institution under the absolute control of the State, and, therefore, a two-thirds vote of each House of the Legislature for the act in question was not necessary."
2. "There is nothing shown in the answer which prevented the Governor by an adjournment of the Legislature from communicating with the House in which said bill originated any objection thereto, and returning the bill to it." This demurrer was overruled.

On the trial of the case, it was shown that the act was not passed by a two-thirds vote of each house. After hearing the evidence, the court adjudged that the petitioner was not entitled to the relief prayed for, and or-

dered the petition dismissed. From this judgment, the petitioner appealed and assigned as error the overruling of its demurrer to the answer of the respondent and the judgment of the court dismissing the petition.

PILLANS, HANAW & PILLANS, for appellant.—"A mere cursory reading of the act establishing the institution *and of the statutes passed since,* will suffice to show, without going into details, that it is a mere state agency, *    *    *    *    * a purely governmental function, wise and beneficial."—*State v. Board of Regents of University of Kansas,* 29 L. R. A. 378; *Louis v. Whittle,* 77 Va. 415; *Tulane Fund v. New Orleans,* 38 La. Ann. 292; *University of N. C. v. Maultsby,* 43 N. C. 257; *State v. Knowles,* 16 Fla. 577; and the cases cited in the opinion of Mr. Justice TYSON in *White v. Alabama Insane Hospital,* 138 Ala. p. 483.

MASSEY WILSON, Attorney-General, for the State.

SIMPSON, J.—The record presents the question of the validity of the act of 1903, making an appropriation of "Twenty Thousand Dollars to aid in the repairs, extension and improvement of the buildings and equipment of the Medical Department of the University of Alabama, at Mobile," which act was signed by the presiding officers of the senate and house of representatives, but retained by the governor, without his approval, until after the adjournment of the legislature.

Section 73 of the Constitution of Alabama provides that "No appropriation shall be made to any charitable or educational institution not under the absolute control of the State, other than normal schools established by law for the professional training of teachers for the public schools of the State, except by a vote of two-thirds of all the members elected to each House."

And the question raised, by the demurrer to the return is, whether or not the Medical College of Alabama, is an institution under the absolute control of the State.

While we recognize the value of this important educational institution, and realize that it is proper that such an institution should be sustained as a part of the State

University, yet this question must be decided upon the principles of construction as applied to this section of our Constitution in connection with the act incorporating said medical college.

Webster's International Dictionary defines *absolute* (from *absolvere,* to loose, or to set free) as "Loosed from any limitation or condition, uncontrolled, unrestricted, unconditional." And the Century Dictionary defines it as "Free from any restrictions," etc.

The act, incorporating the Medical College of Alabama, creates it a body corporate, naming the board of trustees, in the first instance fourteen in number, and authorizes the board of trustees to fill vacancies and to have any number of trustees from 12 to 24. It confers on them the usual corporate powers, including the power to acquire and dispose of real and personal estate, and all such property to be held exclusively for the use of said college, also to elect professors and organize a faculty. *"Provided, however,* the capital of said corporation shall not exceed One Hundred Thousand Dollars." It leaves it to said corporation to have taught "Such sciences connected with medicine as it may deem proper," and to constitute and fill such chairs "As it may see fit." $50,000.00 is appropriated "In aid of" said college, to be applied to the purchase of a suitable lot, or lots, and erection of buildings, and requires the president of the board of trustees to execute "Bonds with good and sufficient security in the penalty of $100,000.00, payable to the State of Alabama and conditioned that said moneys shall be faithfully applied to the purposes contemplated by this act."

It then provides for the instruction of one indigent student from each county, and declares the college "Shall constitute a department of the University of Alabama, and, upon the dissolution of said corporation from any cause whatever, all the property real and personal *belonging to the corporation* hereby created, or held in trust for it, shall inure to the benefit of and vest in the University. * * * * *Provided;* that nothing in this act contained shall be so construed, as to authorize the application of any portion of the University fund * * * * to the purposes of the corporation hereby created."

It then provides that "This act may be altered or repealed upon the application of not less than two-thirds of the board of trustees," and makes the president of the board *ex officio* a member of the board of trustees of the University.—Acts, 1859-60 p. 348.

In the famous Dartmouth College case, because the corporation was organized to provide for an educational enterprise started by individual means, and placed in the hands of a self-perpetuating board who had complete control of it, the Supreme Court of the United States declared that it was a private and not a public corporation, and that its charter constituted a contract between the government and the incorporators, the obligation of which could not be impaired by any subsequent act of the legislature.—*Dartmouth College v. Woodward,* 4 Wheaton 518, 630, 640. Judge Story remarks in this case that "When the corporation is said at the bar to be public, it is not merely meant that the whole people may be the proper objects of the bounty, but that the government has the sole right, as trustee of the public interests, to regulate, control and direct the corporation and its funds and franchises, at its own will and pleasure."

In the case of the medical college in Virginia, the board of visitors were appointed by the governor, and they were required to make annual reports to the second auditor, and the right to alter, modify or repeal the charter was reserved, and the appropriation was made only on condition that the college authorities should convey all of their property to the literary fund of the State, and the court says, quoting Judge Story; "Strictly speaking, public corporations are such only as are founded by the government for purposes where the whole interests belong to the government." That corporation came up to all the tests and was declared public.—*Lewis v. Whittle,* 77 Va. 415, 419.

In the Kansas University case, the university was established, maintained and governed by the State, under constitutional requirements.—*State, ex. rel. Little v. Board of Rights,* 29 L. R. A. 378, 382.

The same is true of the Florida Agricultural College case.—*State, ex rel. Attorney-General v. Knowles,* 16 Fla. 577.

[State, *ex rel.* Medical College of Alabama v. Sowell.]

And in the case of the University of North Carolina, the decision is based upon the fact that the university was "Founded by the State, on the public funds and for a general public charity, and that the trustees were elected and controlled by the legislature."—*University of North Carolina v. Maultsby,* 43 N. C. 257.

In the case of our own University, and Insane Hospitals, the corporations are clearly simply the agencies of the State to administer its funds for certain purposes. They make reports to the State, and are entirely under the direction and control of the State.—*Trustees of University v. Winston,* 5 Stew. & Porter 17; *White v. Alabama Insane Hospitals,* 138 Ala. 479.

As before stated, our constitutional requirement is not satisfied, even with its being a public corporation, but it must be "Under the absolute control of the State." In other words, according to the definition, under the "Unrestricted," "Unconditional," or "Uncontrolled" control of the State, "Free from any restrictions."

The entire control and management of this college is committed to the self-perpetuating board of trustees. While one section declares it to be a part of the university yet it is specially excepted from any participation in the university fund, and the trustees of the university are not given any control of it.

Its trustees might conclude to close it, or they might change its curriculum, and devote it to teaching the healing art by osteopathy, christian science, or ostrology, and the State could not say nay. If the State were to undertake to order the property sold, and change its location, or to make any other alteration, the trustees, or those who own the "capital," might say "Our money is interested in this corporation, you only aided us, the control is placed in our hands, you cannot impair the obligation of our contract, you cannot alter or amend our charter, unless a request be made by two-thirds of our board." It cannot come under the control of the State, unless the trustees abandon it, and then its assets would go to the university. The State has no authority to de-

[State, *ex rel.* Van Deusen v. Williams.]

mand a statement of its receipts and disbursements. In fact, in place of having absolute control, the State has no control of it. The mere recitation, in subsequent acts, making appropriations could not change the chartered rights of the corporation, as originally organized.

In order to bring this college within the provisions of our Constitution so as to authorize an appropriation to it by less than the two-third vote required, it would be necessary to have its charter amended and place it under the absolute control of the State.

The judgment of the court is affirmed.

McCLELLAN, C. J., TYSON and ANDERSON, J.J., concurring.