(86 South. 77)

**STEVENS et al. v. THAMES. (1 Div. 162.)**

(Supreme Court of Alabama. June 30, 1920.)

**1. Colleges and universities ☞3—Constitutional provision as to removal of University not applicable to Mobile Medical College.**

Const. 1901, § 267, prohibiting the removal of the University of Alabama and other institutions there named, except upon a vote of two-thirds of the Legislature, in view of section 264, applies merely to the removal of the University as located at Tuscaloosa when the Constitution was adopted, and not to the Mobile Medical College, a mere subsidiary located in another congressional district.

**2. Colleges and universities ☞3—Removal of Medical College from Mobile held within power of state.**

Under Acts 1907, p. 357, dissolving charter of Mobile Medical College, and placing ownership of the property of the college in the board of trustees of the University of Alabama, the Mobile Medical College became a state agency, entitling state to move college from Mobile, notwithstanding provisions of such act that it should remain in Mobile for all time.

**3. Colleges and universities ☞11 — Act dissolving Mobile Medical College ratified by conveyance of property to University.**

If the passage of Acts 1907, p. 357, dissolving the charter of the Mobile Medical College and placing it under control of the University of Alabama, was not procured by a vote of two-thirds of the board of trustees of such college, the enactment was ratified by the conveyance of its property by the trustees of the college to the University pursuant to such act.

**4. Constitutional law ☞120—Obligations of state as to location or management of its institutions not contractual.**

The contractual clauses of the federal and state Constitutions have no application to obligations on the part of the state as to the location, conduct, or management of its own institutions.

**5. Colleges and universities ☞2—Act authorizing removal of medical school not unconstitutional.**

Acts 1915, p. 133, directing the removal of the medical department of the University of Alabama from Mobile on a certain contingency, does not violate Const. 1901, § 264, by attempting to deprive the University trustees of a discretion as to the management and control of the University; the act relating to a matter within the legislative power of the state.

**6. Constitutional law ☞66—Direction to University trustees to act on a certain contingency not delegation of power.**

In Acts 1915, p. 133, the direction to the State University trustees to remove the University medical department from Mobile whenever the Council on Medical Education of the American Medical Association informs them that it proposes to lower the classification of such medical department is not a delegation of legislative power, as the act merely authorizes an ascertainment of a status on a highly expert authority.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Bill by Eugene Thames against Thomas M. Stevens and others, as trustees of the University of Alabama and the officials of the University, to enjoin the removal to Tuscaloosa from Mobile of any of the fixtures, paraphernalia, or other property of the Mobile Medical College. From a decree overruling demurrers to the bill, respondents appeal. Reversed and rendered.

J. Q. Smith, Atty. Gen., and Steiner, Crum & Weil, of Montgomery, for appellants.

For a history of the Mobile Medical College, see Acts 1859-69, p. 348, § 8; Acts 1907, p. 340, § 3; Acts 1907, p. 357; Acts 1915, p. 133, amending section 1889, Code 1907; Acts 1919, p. 567, at page 659; sections 264 and 267, Const. 1901. The Medical College of Alabama was a mere private corporation, although it was made a part of the University and state aid was given it. 143 Ala. 404, 39 South. 271. The purpose of section 267, Const. 1901, had in mind the location of the State University as at Tuscaloosa. It is well settled that contracts cannot arise from public laws relating to governmental subjects. 100 U. S. 548, 25 L. Ed. 710; 132 Mo. 410, 33 S. W. 1130, 31 L. R. A. 815; 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636; 166 U. S. 150, 17 Sup. Ct. 532, 41 L. Ed. 953; 14 Wyo. 318, 84 Pac. 101; 149 Mo. 57, 50 S. W. 880, 45 L. R. A. 675. The University trustees are but agents of the state, and not subject to suit in their official capacity. 161 Ala. 639, 49 South. 814.

Gordon & Edington, of Mobile, for appellee.

Complainant had the right to file the bill. 22 Cyc. 910; 127 Ala. 320, 28 South. 405; 133 Ala. 459, 32 South. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46; 176 Ala. 365, 58 South. 280; 209 Pa. 349, 58 Atl. 670; 24 Colo. 175, 49 Pac. 288; 92 U. S. 541, 23 L. Ed. 623. While the board of trustees in their official capacity cannot be enjoined as individuals, they can be enjoined from doing an unlawful and unconstitutional act. 167 U. S. 203, 17 Sup. Ct. 995, 42 L. Ed. 136; 169 U. S. 461, 18 Sup. Ct. 403, 42 L. Ed. 807; 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 723, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150; 129 Ala. 500, 29 South. 867; 159 Ala. 595, 48 South. 675; 22 Cyc. 879, 881, 885. There was no valid act granting the right to the board of trustees to remove the Medical Department from Mobile. Sections 264 and 267, Const. 1901; 112 La. 656, 36 South. 649; 142

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Ala. 287, 38 South. 268; section 1889, Code 1907.

ANDERSON, C. J. [1] I am of the opinion that section 267 of the Constitution, prohibiting the removal of the University of Alabama and other institutions there named, except upon a vote of two-thirds of the Legislature, when considered in connection with section 264, applies to the removal of the University, as located at Tuscaloosa when the Constitution was adopted, and not to the Mobile Medical College, a mere subsidiary located in another congressional district.

[2] I am not persuaded that the state is precluded by section 22 of the Constitution or the contract clause of the federal Constitution (article 1, § 10), under the influence of the Dartmouth College Case, from removing or abolishing the medical department of the University as now existing, located at Mobile, for the reason that it is now unquestionably a part of the University of Alabama, and under the management and control of its trustees, and to every intent and purpose is a state agency. White v. Alabama Insane Hospital, 138 Ala. 479, 35 South. 454. It is true that this court held in the case of State ex rel. v. Sowell, 143 Ala. 494, 39 South. 246 that the Mobile College was not under the absolute control of the state, so as to bring it within the influence of section 73 of the Constitution as to appropriations to institutions "not under the absolute control of the state," and arguendo or by dicta stated in effect that, notwithstanding the charter act of 1860 (Acts 1859–60, p. 348) made it a part of the University of Alabama, it was a separate and distinct corporation, under the absolute control of its own governing board, and came within the influence of the Dartmouth College Case, and that the state had no control of its property, or the right to alter or change the location thereof, unless a request for such purpose or for a change of the charter was made by two-thirds of the board of trustees.

I do not care to commit myself to the soundness of these expressions, which were not decisive of the real point involved in said case, as the Mobile College was expressly made a part of the University by the charter act, whether it had absolute control of same or not; still these expressions have been in the books for 15 years, and interested parties seem to have acted thereunder in all succeeding acts of the Legislature and dealings with each other, and I am therefore willing to concede that the Mobile Medical College had a binding contract with the state under the charter act of 1860, and which could not be altered or abrogated by the state without the assent of two-thirds of its board of trustees; but, in my opinion, this consent has been given, and the charter heretofore granted by the state has been effectually and legally dissolved. This was done by Acts 1907, p. 357.

True, it does not appear that the passage of this act was procured by two-thirds of the board of trustees of the Mobile Medical College, and if such was not the case it might not be binding; but this record discloses a conveyance made by the Medical College on May 20, 1907, not only conveying all its property to the University of Alabama, but setting forth by preamble the passage of the act of March 6, 1907, dissolving the corporation, and that its board of trustees took steps to procure the passage of same.

[3] This not only discloses that the act was passed at the instance of the trustees of said Medical College, but would be a complete ratification of same, had they not procured its enactment, and the very moment that they consented to a dissolution of the corporation they thereby surrendered any contractual rights that they may have had under their original charter, and put the institution, so to speak, entirely at the mercy and control of the state of Alabama. It may be true that the act dissolving the charter and transferring the corporation "provided" that the said medical department shall remain in Mobile for all time, but this could be no contractual obligation on the part of the state as to the future maintenance and location of its own agency. As long as the Medical College retained its charter, any obligations on the part of the state with it may have been of a contractual nature; but the very moment that it consented to a dissolution of the charter and a resultant merger of the medical department into the University of Alabama, it thereby became a state agency, and was chargeable with notice of that legal principle that the state could make no legal binding contracts with reference to the future maintenance, management, and control of its governmental or other public agencies, and this proviso in the act may have been a high moral promise upon the part of the state to permit this college to remain at Mobile, but was in no sense a legal contract on its part to do so.

[4] In other words, the contractual clause of the federal and state Constitutions has no application to obligations on the part of the state as to the location, conduct, or management of its own institutions. Newton v. Board of County Commissioners, 100 U. S. 548, 25 L. Ed. 710. It is true this case involves what might be termed a governmental agency, strictly speaking; but the rule there declared can well be applied to the different departments of the state, such as the University, the Insane Hospital, and other institutions, educational, charitable, or otherwise, which it controls and selects as an agency for carrying on special kinds of work for its benefit or for the public interest. Moreover, the deed in question recites certain facts leading up to the execution of same, among which is some doubt upon the part of certain state officials as to the efficacy of

the act in question, and said deed expressly pretermits the proviso clause as set out in the act. This, however, is of course not conclusive that the deed was not influenced by the proviso in the act; but, be that as it may, the, proviso had no binding legal effect upon the state as a contractual obligation with reference to the location and maintenance of its own institutions, though it should perhaps be treated by our lawmakers as a high moral obligation, when dealing with said medical department, that is, under ordinary or normal conditions, for even that proviso could hardly fasten the moral obligation upon the state to maintain the institution at Mobile under abnormal conditions, or when to do so would, perhaps, be impracticable or impossible. This, however, is a question which must address itself to the lawmaking body, and with which the court cannot deal.

[5, 6] It is also urged that Acts 1915, p. 133, violates section 264 of the Constitution, because it attempts to deprive the trustees of the University of Alabama of a discretion as to the management and control of the University. We do not think that the act in question invades the powers of management and control of the trustees, within the provision of section 264, but relates to a matter within the legislative power of the state, and which is not included in the powers of management and control of the trustees, as governed by said section 264 of the Constitution. Nor are we persuaded that the direction to the trustees to act upon a status to be ascertained by the American Medical Association is a delegation of legislative authority, as the Legislature provides the law, as well as the subject upon which it shall act, and merely authorizes an ascertainment of a status upon a highly expert authority. It results that the bill is without equity, and the decree of the circuit court in upholding same is hereby reversed, and one is rendered dismissing the bill.

Reversed and rendered.

SAYRE, SOMERVILLE, GARDNER, THOMAS, and BROWN, JJ., concur.

McCLELLAN, J., being a member of the board of trustees and party to the cause, is therefore disqualified, and did not sit or participate in the consideration of this cause.

BROWN, J. (concurring). The only point of difficulty of some apparent merit is that presented by the contention of appellee that the trustees of the Medical College consented to the dissolution of the corporation owning and controlling the franchises and physical property of the Medical College of Alabama, upon the condition expressed by the proviso in the act approved March 6, 1907, "that the said medical department shall remain at Mobile for all time"; that the transaction through which these rights were surrendered by the board of trustees of the Medical College of Alabama, and acquired by the state and vested in the board of trustees of the University of Alabama, constitute a contract, protected from impairment by both the state and federal Constitution. Const. Ala. 1901, § 22; Const. U. S. art. 1, § 10; Slaughter v. Mobile, 73 Ala. 134; State v. Cobb, 64 Ala. 127.

The facts pertinent to this question, in short, are: Section 8 of the legislative charter of the Medical College of Alabama provides:

"That 'The Medical College of Alabama,' hereby incorporated, shall constitute a department of the University of the State of Alabama, and upon the dissolution of said corporation from any cause whatever, all the property real or personal belonging to the corporation hereby created or held in trust for it shall inure to the benefit of and vest in the University of the State of Alabama." Acts 1859–60, p. 350.

By act approved March 4, 1907, the sum of $45,000 was appropriated out of the state's treasury "for the purpose of making needed improvements in the material equipment of the Medical College of Alabama, including the erection and furnishing of new buildings and the necessary repairs and furnishing of the buildings now [then] in existence," upon the conditions:

"That the money herein appropriated shall not be available, and the auditor shall not draw his warrant on the treasurer for said money, or any part thereof, until the title to all the property, real and personal, of every kind and description of said Medical College of Alabama shall have been vested in the board of trustees of the University of Alabama, and until the board of trustees of the University of Alabama shall have assumed full, complete and absolute management of and control over the said medical college of Alabama." Acts 1907, p. 340, §§ 1, 3.

On March 6, 1907, the act dissolving the corporation "styled the Medical College of Alabama" was approved, section one of which act reads as follows:

"Be it enacted by the Legislature of Alabama, that the corporation styled the Medical College of Alabama be and the same is hereby dissolved, and the institution heretofore known as the Medical College of Alabama is hereby declared and constituted the Medical Department of the University of Alabama and shall hereafter be under the sole management, ownership and control of the board of trustees of the University of Alabama: Provided that the said Medical Department shall remain at Mobile for all time." Acts 1907, p. 357, § 1.

This act was carried forward into the Code of 1907 as section 1889.

On April 5, 1907, the board of trustees of the University of Alabama passed a resolution, which, after reciting the passage of the acts hereinbefore mentioned, proceeded:

"Be it resolved that the board of trustees of the University of Alabama does now assume

full, complete, and absolute management of and control over the Medical College of Alabama, and accepts title to all property, real and personal, of every kind and description of said Medical College of Alabama, in accordance with provisions of said act of 1907, and that act of the Legislature of Alabama entitled 'An act to provide necessary funds for maintenance, repairs, improvements, apparatus and additions to the Medical College of Alabama,' approved March 4, 1907."

Subsequent to the passage of this resolution, to satisfy a doubt expressed "by some of the state officers charged with the disbursement" of the appropriation made by the act of March 4, 1907, the board of trustees of the Medical College executed and delivered to the board of trustees of the University of Alabama a deed conveying all the property, both real and personal, of the Medical College of Alabama; the consideration and purposes for such conveyance being thus set forth in the deed:

"Whereas, the act approved January 30, 1860, incorporating the Medical College of Alabama, provides, among other things, that upon the dissolution of said corporation from any cause whatever all of the property real or personal belonging to said corporation or held in trust for it shall inure to the benefit of and vest in the University of Alabama, and Whereas, this board heretofore determined that it would be to the interest of the institution of learning for many years conducted by said corporation known as the Medical College of Alabama to have the same become a part of the University of Alabama, and to that end took steps which resulted in the passage of an act, approved March 4, 1907, making an appropriation of $45,000 for the use of said institution, and also an act approved March 6, 1907, dissolving the corporation styled the Medical College of Alabama, and the individuals composing this board, being advised that they had no further functions or duties to perform as such trustees, resigned as such trustees; and whereas, the appropriation made by the above-mentioned act approved March 4, 1907, by virtue of section 3 thereof, is not available until the title to all the property, real and personal, of every kind and description, of said Medical College of Alabama, shall have been vested in the board of trustees of the University of Alabama, and this board is now advised that, notwithstanding the legislative acts and other proceedings above recited doubt has been expressed by some of the state officers charged with the disbursement of such appropriation as to whether or not the title to the property of said Medical College of Alabama has vested in the University of Alabama or its trustees, and that the said officers are of the opinion that a conveyance by the Medical College of Alabama of all of its property to the University of Alabama will satisfy such doubt and question," etc.

The Medical College of Alabama, at the time of the transaction here shown, was an existing educational institution, owned and controlled by an independent corporation. It was not a civil institution of the government of this state, endowed with governmental functions to be administered for internal governmental purposes, in respect to which the Legislature of the state may deal according to its own judgment, unrestrained by constitutional limitation. For this reason the holding in Newton v. Com'rs., 100 U. S. 548, 25 L. Ed. 710, and authorities of like import cited by appellant, are not apt.

It was a private eleemosynary corporation, with authority to acquire and own property for its uses, and over it the state had no control. State ex rel. Medical College of Alabama v. Sowell, supra. The manifest purpose of the transaction here involved was to effect a surrender by the corporation of its franchises and property on the condition expressed in the act of March 6, 1907, "that the said Medical Department shall remain at Mobile for all time," and this condition is not made a matter of implication or construction, but is a provision clearly and unmistakably expressed in the act of the Legislature designed to accomplish the transfer of these rights. Dartmouth College v. Woodward, 4 Wheat. 518–640, 4 L. Ed. 629; State ex rel. Medical College of Ala. v. Sowell, 143 Ala. 494, 39 South. 246; Pearsall v. Gr. North. R. R. Co., 161 U. S. 661, 16 Sup. Ct. 705, 40 L. Ed. 838; State v. Ala. Bible Soc., 134 Ala. 632, 32 South. 1011; Mayor v. Ins. Co., 53 Ala. 570; Hare v. Kennerly, 83 Ala. 608, 3 South. 683.

As said by the Supreme Court of the United States:

"Undoubtedly there are cases in which a state may, as it were, lay aside its sovereignty and contract like an individual, and be bound accordingly." Newton v. Com'rs, supra; Curran v. State of Ark., 15 How. 304, 14 L. Ed. 705; Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447; Ala. Co. v. Burkett, 46 Ala. 569.

Therefore, if the Legislature of the state, on the one hand, and the Medical College of Alabama, on the other, had the power and authority to impose this condition in the transfer of the property to the trustees of the University, it constitutes a binding obligation that may be recognized and protected through the courts in so far as the contract is protected by the Constitution. Dartmouth College v. Woodward, supra; State ex rel. Medical College v. Sowell, supra; Pearsall v. Gr. North. R. R. Co., supra; State v. Ala. Bible Soc., supra; Mayor v. Ins. Co., supra; Hare v. Kennerly, supra. Viewed as a contract, the provision in the act of March 6, 1907, relates to future maintenance of the college at Mobile, involving matters of legislative authority and policy in the use of the state's public funds, and over which the courts can exercise no control. It was not a condition precedent to the vesting of the title in the University of Alabama. That title vested by virtue of the act of 1860, upon the dissolution of the corporation known as the

Medical College of Alabama. Section 3 of the charter provides that—

"It [the Medical College of Alabama] is also empowered at any time and in any manner, to acquire and hold or dispose of all such real and personal estate as it may deem necessary for the purposes of said college. All such property and the proceeds thereof, shall be held solely and exclusively in trust, for the use and benefit of said college, and all property of said college, shall be, and the same is hereby made free and exempt from taxation."

Section 8 of the charter provides:

"The Medical College of Alabama hereby incorporated shall constitute a.department of the University of the State of Alabama, and upon the dissolution of said corporation from any cause whatever, all the property, real and personal, belonging to the corporation hereby created, or held in trust for it, shall inure to the benefit of and vest in the University of the State of Alabama."

In the act of incorporation $50,000 was—

"appropriated out of any money in the treasury, not otherwise appropriated, * * * to be applied to the purchase of a suitable lot or lots, and the erection of such buildings as a, majority of the trustees for the time being, and their successors, may deem necessary and proper for the purpose of said college."

It is impossible to read these provisions of the act, and not be driven to the conclusion that the state had an interest in any and all property acquired by the Medical College of Alabama, inchoate, of course, but subject to become absolute upon the dissolution of the corporation created by the act, for any cause whatsoever, and upon the happening of this event the title passed to and vested in the University of Alabama. Under the terms of this charter contract, as long as the corporation existed and functioned as an educational agency, it owned and controlled the property, with the right to dispose of it for the use of the college, but upon the death of the corporation its entire interest ceased, and the property became the property of the state by the terms of the contract, and this contract could not be impaired or changed by any subsequent act of the Legislature.

The deed executed by the Medical College of Alabama, through its president and secretary, and signed by its trustees, shows that the acts of the Legislature of March 4th and March 6th were passed by the procurement and consent of the trustees of the Medical College, and the sole legal effect of the act of March 6, 1907, was to accomplish the dissolution and destruction of the corporation known as the "Medical College of Alabama," and eo instante the title to all property owned by it passed to and vested in the University, unincumbered by any condition on that title, and hence passed under the control and management of the board of trustees of the University by virtue of this act of 1907.

Section 267 of the Constitution provides that—

"The Legislature shall not have power to change the location of the State University, or the Alabama Polytechnic Institute, or the Alabama Schools for the Deaf and Blind, or the Alabama Girls' Industrial School, as now established by law, except upon a vote of two-thirds of the Legislature taken by yeas and nays and entered upon the journals."

This section clearly is not dealing with the power of control vested in the trustees of the University by section 264, and, when the two sections are considered together, it is manifest that the power of management and control vested in the trustees by section 264 does not include the power of removal—a power, in the absence of constitutional restraint, residing in the Legislature. It is not a matter of doubt, however, that the term "the State University" is used in the same sense in the two sections, and that it relates to the institution of learning located at Tuscaloosa, in the Sixth congressional district, and that the limitations placed on the Legislature by section 267 do not apply to the Medical College at Mobile. It therefore follows that the act of February 18, 1915, does not impinge either of these sections of the Constitution.

Section 21, art. 31, of the act approved September 26, 1919, provides:

"The corporation styled the Medical College of Alabama is dissolved and the institution known as the Medical College of Alabama is constituted the Medical Department of the University of Alabama, and shall hereafter be under the sole ownership, management and control of the board of trustees of the University of Alabama," etc. Acts 1919, p. 659.

Said section.is a clear revision of the whole subject-matter embodied in the act of February 18, 1915, and operated to repeal the act of 1915, vesting in the board of trustees a discretion in dealing with the Medical Department at Mobile, unrestrained by legislative mandate. Lemay v. Walker, 62 Ala. 39; Powell v. State ex rel. Hasty, 142 Ala. 80, 39 South. 164.

The averments of the bill show that the defendants are proceeding under the supposed mandatory provisions of the acts of 1915 to remove the Medical Department from Mobile, and whether they will further proceed on being advised that they are not required by the acts of 1915 to so proceed, we are not advised. The restraint on their discretion, afforded by the act of 1915, being removed, the moral obligation arising from this transaction, and the question of protecting the state's honor, would no doubt appeal to them in their future actions in respect to the removal of the Medical Department. However, their acts are not unlawful, and cannot be restrained through the courts.

For these reasons I concur in the conclusion that the bill is without equity.