166 So. 706

**In re OPINIONS OF THE JUSTICES.**

No. 36.

Supreme Court of Alabama.

March 23, 1936.

In re: Substitute for House. Bill No. 21.
To the Honorable Speaker and Members of the House of Representatives of Alabama.

Sirs:

First. We are of the opinion that both the title and subject-matter of the act relate to the raising of revenue through a gross receipts tax for educational, health, and relief purposes. It is therefore within the scope of the call of the Governor convening this special session of the Legislature, and requires for its passage the customary majority of each House of the Legislature.

Second. Your inquiry No. 3, touching the constitutionality of the provisions of this proposed statute submitting same to the vote of the people, is of such vital and far-reaching effects, going to the fundamental character of our constitutional form of representative government, that careful consideration of the question has been given, without reaching a unanimous decision.

Section 28 of the proposed law provides for a "Yes" and "No" vote on the following: "Question No. 1. Shall the proposed gross receipts tax for educational, health and relief purposes become a law?"

Section 29 reads: "If the majority vote on Question No. 1 on the ballot is 'Yes,' then this Act shall become effective on the 1st day of June 1936; but if the majority vote on Question No. 1 on the ballot is 'No,' then this Act shall become null and void and of no effect."

It is perfectly apparent these provisions show an intent that this act shall not become a law unless made so by an affirmative vote of the qualified voters. If, therefore, the provision for a referendum is unconstitutional and void, the act cannot become effective in any event.

The Constitution of Alabama decrees: "Section 44. The legislative power of this state shall be vested in a legislature which shall consist of a senate and a house of representatives."

Here is the express constitutional provision for representative government, as distinguished from one of direct legislation by the people. It is based on the concept that democratic government functions best through a written Constitution vesting the full legislative power in representatives chosen by the people from all sections of the state, sitting together in two distinct deliberative bodies, with full power to give hearings, make inquiries as to all matters shedding light on the wisdom and fairness of the proposed legislation. Numerous safeguards in the passage of laws are provided, not the least of which is a veto power in the Governor.

■ The general proposition is everywhere recognized that the Legislature cannot delegate its legislative powers, save as authorized by the Constitution itself.

The power to delegate to counties and cities certain legislative powers relating to local governments is a part of the full legislative powers conferred on the Legislature. The power to prescribe the manner in which local governments shall function includes the power to provide for local referendums. The Constitution itself provides for local referendums in several instances, especially those where bonded indebtedness on long-term levies of taxes are to be imposed.

But our Constitution provides for no state referendum except on amendments to the Constitution, wherein the action of the people shall become permanent until changed by themselves through further amendment.

■ By the great weight of authority in America it is firmly held that an enactment to become the law of the state or not, as the result of a state-wide election, called in the act, is a delegation of legislative power or an abrogation of the power conferred on the Legislature, a departure from the fundamental principles of representative government.

The leading case of Barto v. Himrod, 8 N.Y.(4 Selden) 483, 59 Am.Dec. 506, 512–514, dealing with a Constitution like ours, declared the law in these words:

"All the foregoing provisions contemplate that a law receives its vitality from the legislature. The representatives of the people are the law makers, and they are responsible to their constituents for their conduct in that capacity. By following the directions of the constitution, each member has an opportunity of proposing amendments. The general policy of the law, as well as the fitness of its details, is open to discussion. The popular feeling is expressed through their representatives; and the latter are enlightened and influenced more or less by the discussions of the public press.

"A complicated system can only be perfected by a body composed of a limited number, with power to make amendments and to enjoy the benefit of free discussion and consultation. This can never be accomplished with reference to such a system when submitted to a vote of the people. They must take the system proposed or nothing. They can adopt no amendments, however obvious may be their necessity. With respect to the single case where the constitution requires a submission of the law to the people, the inconvenience is less felt, because only a single proposition is submitted, with respect to which no other answer can be given than yes or no.

"The law under consideration is in conflict with the constitution in various respects. Instead of becoming a law by the action of the organs appointed by the constitution for that purpose, it claims to become a law by the vote of the electors; and it claims that the popular vote may make it void and restore the former law. All the safeguards which the constitution has provided are broken down, and the members of the legislature are allowed to evade the responsibility which belongs to their office. * * *

"In short, the law was a mere proposition submitted to the people to be adopted or rejected as they pleased. If this mode of legislation is permitted and becomes general, it will soon bring to a close the whole system of representative government which has been so justly our pride. The legislature will become an irresponsible cabal, too timid to assume the responsibility of lawgivers, and with just wisdom enough to devise subtile schemes of imposture, to mis-

lead the people. All the checks against improvident legislation will be swept away; and the character of the constitution will be radically changed."

A review of the authorities generally will be found in People of State of Illinois ex rel. Charles M. Thomson v. Barnett et al., etc., 344 Ill. 62, 176 N.E. 108, 76 A.L.R. 1044, and note, page 1053 et seq. See, also, 12 C.J. p. 841; Cooley's Con.Lim. p. 239.

We would add only a few observations on the proposition, advanced by adherents to the minority rule, to the effect that such referendum is merely an appeal to the people, the source of governmental power, and should be approved, on the idea that the servant or agent should abide the decision of his principal.

On clear analysis, the analogy does not hold.

█ This tax statute, for example, does not leave it to the people whether they shall call an election on the subject. In calling the election, it purports to have the force of law, requires all officers having duties in that connection to proceed to the holding of the election and declare the result, to become effective, although only a small minority of the electorate may vote at all.

Again, the act of the people, when thus made into law, is subject to repeal by the Legislature at any time, the next week, if the Legislature be in session and so will.

This power of repeal, inherent in the power to make laws, cannot be abrogated by the Legislature to whom it has been committed by the people as a continuing unimpaired power.

Is it not obvious there is no reverence for the solemn action of the sovereign people if their action is subordinate to the will of the Legislature at any time thereafter? Hence it is that, in elections by the people, the officers they elect can only be removed for cause under the Constitution and laws, and the constitutional changes they make as part of the supreme law remain until the people repeal them.

There is a manifest distinction between acts of this class and enabling acts to put in force constitutional amendments if and when adopted by the people. The referendum in the latter case is one provided for in the Constitution, and the act is merely contingent on the adoption of the amendment it is designed to put into effect.

When all is said, the referendum here provided is an attempted delegation of legislative power, which, if once sanctioned, may easily lead to the breaking down of a representative government, a casting upon the people, themselves, the duty to leave their ordinary avocations, and devote them to a study of the policy as well as administrative details of laws they are called upon to enact or reject, with no opportunity to amend. Most certainly, it tends to lower the sense of responsibility of the legislator chosen by the people to counsel with his fellows and legislate for his constituents.

We deem the proposed act in present form unconstitutional and void.

> LUCIEN D. GARDNER,
> VIRGIL BOULDIN,
> JOEL B. BROWN,
> Associate Justices.

We concur in the foregoing conclusion as to the act providing for a sales tax and in the view that so much thereof as called for a referendum is invalid. We concurred with the majority in upholding the referendum on the repeal or modification of the liquor law, but think that bill and this one can be well differentiated, and it is our opinion that it was never the purpose or intention under our form of government to raise revenue or levy taxes by a general election, except in the few cases provided for by the Constitution. We think that the fact that the Constitution requires and authorizes elections on a certain character of taxes indicates the idea that elections on all other taxes are excluded. In fact, section 212 of the Constitution is as follows: "The power to levy taxes shall not be delegated to individuals or private corporations or associations."

The bill now under consideration is nothing short of a delegation to individuals, that is, the voters of the state, the right and duty of levying the tax in question.

"It is a general rule of constitutional law that a sovereign power conferred by the people upon any one branch or department of the government is not to be delegated by that branch or department to any other. This is a principle which pervades our whole political system and when properly understood admits no exception. And it is applicable with peculiar force to the case of taxation. The power to tax is the legislative power. The people have created a legislative department for the exercise of

the legislative power; and within that power lies the authority to describe the rules of taxation and to regulate the manner in which those rules shall be given effect. The people have not authorized this department to relieve itself of the responsibility by a substitution of other agencies." Cooley on Taxation, pp. 99 and 100.

The tax in question not being one of the kind to be levied by an election as provided by our Constitution, the levy of same is peculiarly within the province of the Legislature who has no right to delegate the responsibility to the individual voters of the state.

JNO. C. ANDERSON,
Chief Justice.
WILLIAM H. THOMAS,
A. B. FOSTER,
THOMAS E. KNIGHT,
Associate Justices.