194 So. 533

**HAWKINS, Judge, v. CITY OF BIRMINGHAM.**

6 Div. 559.

Supreme Court of Alabama.

Jan. 11, 1940.

Rehearing Denied March 7, 1940.

Thos. E. Skinner, Mullins & Deramus, and Caesar B. Powell, all of Birmingham, for appellant.

W. J. Wynn and Jas. H. Willis, both of Birmingham, for appellee.

GARDNER, Justice.

In March, 1939, an ordinance was adopted by the City Commission of Birmingham imposing certain additional license taxes upon dealers in tobacco products, cigars, cigarettes and smoking tobacco, with provisions clearly designed to constitute such additional taxes in substance and effect consumers' taxes.

In June, 1939, a petition was presented to the Probate Judge of Jefferson County purporting to be signed by five thousand qualified electors of the city of Birmingham, looking to an election to be held for a repeal of said tobacco tax ordinance—said petition being filed under the provisions of General Acts 1927, page 254, amending section 16 of the Act of 1915, as amended by Act of August 15, 1923. See, section 8, Act of September 25, 1915 (General Acts 1915, page 793; section 16, Act of August 15, 1923 (Gen.Acts 1923, p. 118); section 1, Act of August 11, 1927, General Acts 1927, page 254). The city of Birmingham filed objections before the Probate Judge, and subsequently instituted this proceeding for a writ of prohibition against any further procedure on his part in relation to said petition. The writ was awarded, and from that judgment, this appeal is prosecuted.

Appellant insists that the statutory provisions, above referred to, for initiative and referendum are valid (citing, among other authorities, 43 Corpus Juris 584 and 76; Yeilding v. State, 232 Ala. 292, 167 So. 580; Stein v. Mayor, etc., 24 Ala. 591; In re Opinion of the Justices, 232 Ala. 56, 166 So. 706 and Id., 232 Ala. 60, 166 So. 710), and that the words "any ordinance" in the statute should be accepted in their literal sense.

But this latter insistence overlooks the rule of construction by which courts are guided, that is, they are not controlled by the literal meaning of the language of the statute, but by its spirit and the intention of the law. "That which is within the letter, although not within the spirit, is not within the statute." 59 Corpus Juris 966. Or, as said in Davis & Co. v. Thomas, 154 Ala. 279, 45 So. 897, 898: "It will not do to be governed uniformly by the literal expression of a statute; for by so doing we should many times wander entirely from the obvious intention of the Legislature." And like expressions are to be found in City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159.

In 43 Corpus Juris 585, may be found numerous illustrations tending to show that the words "any ordinance" of this general statute are not to be accepted literally as written. "For obvious reasons only such an ordinance, by-law, or measure may be submitted as within the power of a municipal council to pass or adopt; if it would not be valid if adopted by the coun-

cil, its infirmities cannot be cured by an affirmative vote of the electors." 43 Corpus Juris 585. And other illustrative cases may be found cited in the note to Keigley v. Bench, Utah, 89 P.2d 480, 122 A.L.R. 756, wherein it is observed that it is the general rule that initiative and referendum provisions are applicable only to acts which are legislative in character, and are inapplicable to those dealing with administrative or executive matters.

The city's argument is based upon the theory that, conceding for the moment, the validity of the statute, it is not in the first place to be construed as applicable to the subject of taxation, which includes the duty of budgeting the city's financial affairs, requiring special study, citing in this connection, State v. City of St. Petersburg, 106 Fla. 742, 144 So. 313, 671, 145 So. 175; General Acts 1915, page 320, as amended by Gen.Acts 1927, page 491; Gen.Acts 1932, Ex.Sess., page 203; Gen.Acts 1935, page 155; Opinion of the Justices, 232 Ala. 56, 166 So. 706. To which may be added Denman v. Quin, Tex.Civ.App., 116 S.W.2d 783; Swain v. Fritchman, 21 Idaho 783, 125 P. 319, and State v. Regan, 317 Mo. 1216, 298 S.W. 747, 55 A.L.R. 773, cited in note 122 A.L.R. 772, 773.

And, in the second place, the city urges that conceding tax matters are included within the statute that a mere repealing ordinance, as here proposed, was not in contemplation as it does not give the voter a proper choice so that an election would record the majority sentiment upon any one tax—cigars, cigarettes or smoking tobacco—with reliance upon Town of Woodlawn v. Cain, 135 Ala. 369, 33 So. 149.

These questions, however, present debatable ground, and upon which a difference of view may well arise.

■ There is one question, however, upon which perfect harmony of view should prevail, controlling in this case and in line with the trial court's ruling, based upon a principle of law fundamental in our system, both State and federal; that is, that a valid contract obligation is not to be destroyed or impaired by subsequent legislation. "If a general law providing for a referendum is in conflict with a special statute relating to the same subject matter and passed at the same session, and making no provision for a referendum, the special statute will prevail." 43 Corpus Juris 585. While the cited authority (Perrault v. Robinson, 29 Idaho 267, 158 P. 1074) is not entirely analogous here, yet it serves as an illustration upon the question of legislative intent.

In 1915, we have a general initiative and referendum statute. Later (Gen. and Loc. Acts 1921, page 6; Section 2011, Code of 1923; Gen. Acts 1927, pages 515, 516; Gen. Acts 1932, Extra Session page 203) a statute was adopted authorizing any town or city to borrow money for temporary or other lawful purposes, issue notes therefor, and pledge as security any authorized special tax or license, and as a part of the contract may "agree to annually levy, collect and apply," such tax or license to the payment thereof, so long as the same or any part thereof remains unpaid. Of similar import is section 1897, Code of 1923, as amended by General Acts 1935, page 155.

It is without controversy that the city, being in financial stress, borrowed from two banks a sum largely in excess of half a million dollars, and pledged the tax and license revenue as authorized by these statutes, including the tobacco license here involved.

While these notes were outstanding, secured by a pledge of this license tax, appellant sought a repeal of the ordinance under the initiative and referendum feature of the general statute.

If, as a matter of course, the tobacco license schedule is subject to repeal in this manner by vote of the qualified electors, then all other license schedules would be subject to a like treatment, and, if so repealed, the pledge of these taxes as security for the borrowed money would be practically destroyed. Yet that the money was borrowed, and the pledge made in good faith, and in strict conformity to the law, is not controverted.

But appellant answers that any constitutional objection based upon impairment of contracts can be raised only by the banks which are more vitally interested, and direct attention to Braxton County Court v. State of West Virginia, 208 U.S. 192, 28 S.Ct. 275, 52 L.Ed. 450, holding to the general proposition that constitutional questions may be only raised in the courts by one adversely affected by the decision.

As the financial credit of the city may well be said to be at stake, we are not prepared to say the city would not be a party adversely affected. 17 Corpus Juris 797. But we need not stop to make inquiry upon that matter, and leave it to one side.

This for the reason that we are dealing here with the question of legislative intent.

Appellant insists it is entirely a matter of legislative control, and the inquiry here concerns the legislative mind upon such a situation. Appellant argues that the existing statute as to the initiative is to be read into all subsequent acts and conduct. But then again comes the inquiry—what did the lawmakers intend by these later statutes?

■ It is clear enough the lawmakers did not intend by the initiative feature of the general statute to authorize an ordinance at variance with our Constitution and out of harmony with so fundamental a principle as the non-impairment of contracts. And it is equally clear the legislature did not intend to grant authority to pledge the tax and its continuous levy for borrowed money, and at the same time say to the lender the authorized pledge may be repudiated by the initiative and referendum and the pledge subject to be destroyed. Certainly, in reason and common sense, the power to repeal a tax cannot co-exist with a power of the city commission to pledge the tax and agree to its continuous levy. These later statutes must, therefore, be construed as superseding any initiative feature of the general law. Illustrative cases are cited in note in 122 A.L.R. 781.

Such being the construction of the statute under the circumstances here disclosed without dispute, and being decisive of the case, all other questions are left to one side and undetermined. It follows, therefore, that petitioners were not entitled to further press the petition for an election, and the only remaining question relates to the remedy.

As originally enacted (section 8, General Acts 1915, page 793) the petition was presented to the clerk or secretary of the Board of Commissioners, but by amendment the duty of passing upon the sufficiency of the petition has been transferred to an officer who exercises judicial as well as ministerial duties, the probate judge. See, General Acts 1923, page 118. The law confers upon such an official large judicial powers. Grider v. Tally, 77 Ala. 422, 54 Am.Rep. 65.

■ Considering section 1 of General Acts 1927, page 254, in connection with section 29, General Acts 1927, page 302, it is made to appear that the judge of probate is "to hear and determine all questions as to the genuineness of signatures and the qualifications of voters signing such petitions." No person is permitted to sign the name of another to such petition whether with or without authority. Mere inspection by the judge of probate of the registration book would disclose only prima facie evidence that the persons whose names there appear possess the requisite qualifications (Shepherd v. Sartain, 185 Ala. 439, 64 So. 57), and it cannot be questioned that these are matters which may be contested before the probate judge upon submission of such petition. Likewise, the matter of genuineness of signatures thereto. When we consider that the legislature has seen fit to transfer this matter from a purely ministerial officer to an officer exercising large judicial powers, and has provided that he shall "hear and determine" all such questions, we think it clear enough that in passing upon the question and its sufficiency, he is in the exercise of judicial or quasi judicial power as distinguished from purely ministerial functions.

■ Courts exercise a discretionary power in granting writs of prohibition, and in some instances the matter of public interest has been taken into consideration. Ex parte State, ex rel. Bailes, 235 Ala. 133, 177 So. 752; 50 Corpus Juris 709.

In Williams v. State ex rel. Schwarz, 197 Ala. 40, 72 So. 330, the question of remedy appears not to have been raised, though the court and counsel seem to assume that prohibition would lie.

■ We are persuaded prohibition is the appropriate remedy in this case, and that the writ was properly issued. Let the judgment stand affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

On Rehearing.

GARDNER, Justice.

A careful consideration of the ingenious argument of counsel for appellant on this application, leads us to the conclusion the original opinion was not sufficiently clear, and has been misunderstood.

Counsel assume that condemnation of the initiative and referendum proceeding in the instant case is rested upon the constitutional prohibition against impairment of contracts. Counsel refer to the principle of law that the police power of the state or

municipality cannot be contracted away, citing Hard v. State, 228 Ala. 517, 154 So. 77; Stevens v. Thames, 204 Ala. 487, 86 So. 77; Shell v. Beeland, 123 Ala. 569, 26 So. 342; Birmingham Mineral R. Co. v. Parsons, 100 Ala. 662, 13 So. 602, 27 L.R. A. 263, 46 Am.St.Rep. 92; 44 Corpus Juris 1268.

But we entered into no discussion of this constitutional question. Had we done so reference would doubtless have been made to 12 Corpus Juris section 636, and authorities cited in the note as to pledged taxes relied upon by creditors as security, including Edwards v. Williamson, 70 Ala. 145. We gave no study to this question as its determination was not considered of controlling importance on the result, for the reason we were dealing only with legislative intent.

In Stevens v. Thames, supra [204 Ala. 487, 86 So. 79], reference was made to the matter of "high moral obligation," and the general rule of law against the impairment of a valid contract by subsequent legislation is recognized as a sound fundamental principle under our form of government.

The original opinion points out that the legislature had in very general language authorized the initiative and referendum as to "any ordinance," but later authorized the borrowing of money by the city and pledging as security therefor the taxes due the city, and to guarantee their continued levy. And the conclusion was that the legislature did not intend to thus authorize the borrowing of money and pledging the taxes as security therefor, and at the same time to authorize a repeal of the taxes thus pledged. Certainly any such legislation would be deceptive to the lender, and entirely out of harmony with any recognition of a "high moral obligation." We simply concluded that this was not the legislative thought, good faith and good intentions being presumed. Such was the effect of our holding originally, though it may be imperfectly stated. Authorities found cited in our original opinion (State v. City of St. Petersburg, 106 Fla. 742, 144 So. 313, 671, 145 So. 175; Denman v. Quin, Tex. Civ.App., 116 S.W.2d 783; Swain v. Fritchman, 21 Idaho 783, 125 P. 319, and State v. Regan, 317 Mo. 1216, 298 S.W. 747, 55 A.L.R. 773, cited in note 122 A.L.R. 772, 773) lend support to this conclusion as to the legislative mind upon this question.

The later statute gives the city commission power to pledge the tax and continue it in effect. This continued power is inconsistent with the right of another authority, the electors, by initiative and referendum to repeal the taxes thus pledged. Considering the two wholly inconsistent, and presuming of course good faith, we merely intended to hold that it was the legislative intent, in enacting this later statute, that the pledged taxes should not be subject to repeal by any initiative ordinance, and to that extent the earlier statute had been superseded.

Nor did we intend to say the case rested upon the fact the money was actually borrowed and the taxes pledged. Reference to this fact was by way of illustration. We think, and so hold, that the very existence of the power in the city commission to borrow and pledge the taxes, whether the power be exercised or not, is inconsistent with the power of the voters to repeal, and thereby prevent the continuance of the tax as fixed by the commission.

But appellant strenuously argues this conclusion runs counter to the rule of our decisions that a general law will not repeal by implication a local law, although in form a general law, and passed as such (Davis v. Browder, 231 Ala. 332, 165 So. 89; Board of Revenue v. Johnson, 200 Ala. 533, 76 So. 859; Tucker v. McLendon, 210 Ala. 562, 98 So. 797; Mobile & Ohio R. Co. v. State, 29 Ala. 573), and that though the statute providing for the initiative and referendum was general in form (population classification), yet it is local in its application, so to be here considered (Board of Revenue v. Johnson, supra); and, so treated, comes within the above noted rule.

But we think the argument presses the rule too far. We adhere to the general rule as stated in the cited authorities, but we cannot agree it has any controlling influence here. As observed in Tucker v. McLendon, supra [210 Ala. 562, 98 So. 799], "All these rules are merely in aid of the prime aim in all statutory construction—to find the intention of the lawmakers. If such intention is clearly shown by unequivocal language there is no room for construction." In Mobile & Ohio R. Co. v. State, supra, it was said: "And the principle above stated [special provisions are not repealed by general provisions] exacts the concession * * * that no general law, subsequently enacted, can be construed

to add other conditions to those required by the special law, unless the latter law clearly manifests upon its face an intention to add such new conditions." In Davis v. Browder, supra, the holding was that the general law did so manifest upon its face a legislative intent to repeal the local law there in question.

 The underlying reason for the rule that special provisions are not repealed by general provisions, to state it briefly, is discussed in State v. White, 160 Ala. 168, 49 So. 78, 79, where there was sharp division of the Court upon the particular question there considered. One of the reasons for the rule is rested upon the theory that "it is usually presumed to have only general cases in view, and not particular cases which have been already otherwise provided for by the special act."

Here the law as to the initiative and referendum bore no relation to the later enacted statute for the pledge by municipalities of their taxes to secure loans. Formerly the statute was confined to cities and towns of a designated minimum of population (Section 2011, Code of 1923, General Acts 1927, page 515), but by the amendatory Act of November 2, 1932 (Gen.Acts 1932, Ex.Sess., p. 203), the limitation as to population was omitted; and it is now provided that "any city or town" in this State may borrow the money and make the pledge.

Certainly appellant must concede that Birmingham is within the influence of this Act, and that its contracts for a loan are valid and binding thereunder.

We have concluded that it was the legislative intent there be no interference with this power by a repeal of the tax so pledged. It cannot be said this rule of construction is to hold good elsewhere in the State, but that on account of the initiative and referendum provisions applicable to Birmingham a different rule applies. Of course the same rule must be held applicable to "any city or town," including Birmingham, and the mere fact that Birmingham has provisions for initiative and referendum does not serve to defeat this legislative purpose. There is in fact no repeal of the initiative and referendum provision, but in effect the holding is that as to these taxation matters authorized to be so pledged an exception is made in regard to any initiative or referendum provision looking to their repeal.

Speaking to a somewhat similar situation, the Court in Mobile & Ohio R. Co. v. State, supra, observed: "The question here is, not whether the former of the two foregoing acts is repealed by the latter, but whether the latter superadds the conditions mentioned in it to the conditions upon which the renewal of the loan was directed by the former." And the conclusion was the conditions of the later general act were so "superadded".

So here no repeal of the initiative and referendum feature of the former act was affected or intended, but merely that as to the matter of pledged taxes an exception is made thereto.

As these matters were not discussed to any appreciable degree upon the original consideration of the cause, and are now so earnestly pressed upon us, we have considered it proper to respond to the argument of counsel—though perhaps at too great length.

Let the application for rehearing be denied.

Application overruled.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.