444 So.2d 373 (1983)
John CARTER, Administrator, etc.
v.
CITY OF BIRMINGHAM, et al.
82-423.
Supreme Court of Alabama.
December 16, 1983.
O. William Adams, III, Birmingham, and Jack Greenberg, James M. Nabrit, III, and Steven L. Winter, New York City, for appellant.
Charles H. Wyatt, Jr., Birmingham, for appellee City of Birmingham.
James T. Collins and John E. Amari, Birmingham, for appellee George M. Sands.
*374 BEATTY, Justice.
This is an appeal under Rule 54(b), Alabama Rules of Civil Procedure (A.R.Civ. P.), from the grant of partial summary judgments for the defendants. We reverse in part and affirm in part.
The cause arose from the death of Bonita Beatrice Carter, who was shot and killed by George M. Sands, a Birmingham police officer. Following the filing of a claim with the City of Birmingham, the plaintiff, John Carter, administrator of the decedent's estate, brought this action against the City and Sands. The action was brought under the wrongful death statute, Code of 1975, § 6-5-410 and under § 11-47-190. Motions to dismiss were overruled and the defendants filed answers. Discovery ensued. Plaintiff was allowed to file an amendment to the complaint which added four counts, Counts III, IV, V and VI. Count III stated an action under 42 U.S.C. §§ 1981 and 1983 against Sands for the violation of Bonita Carter's right under the due process clause of the Fourteenth Amendment to be free from excessive use of force. Count IV alleged a violation of Bonita Carter's right to equal protection that Sands would not have used deadly force under the same circumstances had she been white. Count V alleged the City's culpable conduct in failing to provide clear guidelines and adequate training, and in failing to discipline, retrain, and reassign Sands, in violation of §§ 1981 and 1983. Count VI added a state law claim against the City for its own wrongful acts, omissions, and negligence resulting in the death of Ms. Carter. Motions to dismiss or, in the alternative, for summary judgment were filed by the defendants, and, after a hearing, the summary judgments were granted "as to any and all claims asserted by plaintiff in the amendment filed ... and more specifically as to Count III, Count IV, Count V and Count VI in said amendment." Summary judgment as to Count VI was not addressed on appeal.
The first issue to be decided by this Court is whether the survival of Bonita Carter's claim for compensatory damages under § 1983 is governed by federal common law or by reference to the Alabama wrongful death statute, supra. We hold that reference must be made to the Alabama act, and that her claim for compensatory damages under § 1983 does not survive.
The substance of the issue presently before this Court was dealt with in Brazier v. Cherry, 293 F.2d 401 (5th Cir.1961), in a factual context similar to the case at bar. In Brazier, an action was brought against Georgia police officers for the death of the deceased resulting from, inter alia, alleged violations of § 1983. The Court in Brazier pointed out that § 1983 does not expressly refer to actions for death or the survival of claims arising from civil rights violations, and, after examining the aims of Congress with specific regard to § 1983, declared:
"[W]e are of the clear view that Congress adopted as federal law the currently effective state law on the general right of survival. This was done by § 1988. With respect to vindication of federally guaranteed civil rights, Congress provided that in all cases where the laws of the United States are `suitable to carry the same into effect' but are `not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law' then the `common law, as modified and changed by the constitution and statutes of the State' in which the federal court is sitting `so far as the same is not inconsistent with the Constitution and laws of the United States' are to `be extended to and govern * * * the trial and disposition' of the case.
". . . .
"When we examine § 1988 in the dual spotlight of the historical major aim of the civil rights legislation, Monroe v. Pape, [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)], and the tolerant, hospitable construction to ameliorate the hardships of the common law rule, there is ample basis for concluding that this statute fills the gap. In fact it is Georgia *375 law, not federal law, which fills the gap.
". . . .
"... From a federal standpoint the only limitation upon the use of such adoptive state legislation, rule or decision is that it is suitable to carry the law into effect because other available direct federal legislation is not adapted to that object or is deficient in furnishing a fully effective redress...." (Footnotes omitted.) 293 F.2d at 405-407, 409.
The Court in Brazier went on to hold that, by virtue of the Georgia statutes, which provided for both survival of the claim that the decedent had for damages sustained during his lifetime and a right of recovery by his surviving widow and others for homicide, the § 1983 claims survived.
It is important to note that, unlike the Georgia statutes, which permit both the wrongful death and the survival actions to be maintained simultaneously, under Alabama law only a wrongful death action may be maintained, and only punitive damages are recoverable. Brown v. Morgan County, 518 F.Supp. 661 (N.D.Ala.1981), Code of 1975, § 6-5-410.
Despite this distinction, the Court in Pollard v. United States, 384 F.Supp. 304, 306 (N.D.Ala.1974), citing Brazier v. Cherry, supra, as authority, held, inter alia:
"Since there is no express federal remedy for wrongful death under the civil rights statutes (42 U.S.C. §§ 1981, 1983, 1985), the common and statutory law of the State of Alabama must be looked to for a suitable remedy not inconsistent with the Constitution and laws of the United States. 42 U.S.C. § 1988. An action against these state defendants for the wrongful deaths of plaintiffs' decedents resulting from violations of the civil rights statutes gives rise, by virtue of Alabama's wrongful death statute, to federally enforceable claims for damages by their personal representatives. Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961), cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961), cited with approval in Moor v. County of Alameda, 411 U.S. 693, 702-703, n. 14, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)." 384 F.Supp. at 306.
Further, in the case of James v. Murphy, 392 F.Supp. 641 (M.D.Ala.1975), the plaintiff brought a § 1983 action against state officials for alleged violations of her deceased husband's civil rights, which resulted in his death, and sought compensatory damages. There, the Court said:
"[Plaintiff], in her complaint, asks for compensatory damages, as did the plaintiff in Brazier v. Cherry, supradamages sustained by the decedent and damages sustained by his survivors. However, the wrongful death action in Alabama [Code of 1975, § 6-5-410] does not provide for compensatory damages as do the wrongful death acts in Georgia. The Alabama wrongful death act provides only for punitive damagesnot for compensatory or actual damages. Hampton v. Roberson, 231 Ala. 55, 58, 163 So. 644; Bell v. Riley Bus Lines, 257 Ala. 120, 57 So.2d 612. The right it creates is the right of the personal representative of the decedent to act as agent by legislative appointment for the effectuation of a legislative policy of the prevention of homicides through the deterrent value of the infliction of punitive damages. Since the Plaintiff, Mattie Mae James, did not claim punitive damages in her complaint, it appears that her complaint is insufficient under §§ 1983, 1988, and the wrongful death act of Alabama [Code of 1975, § 6-5-410] to support a cause of action for the damages claimed." (Footnote omitted.) 392 F.Supp. at 645.
Nevertheless, these lower federal court holdings must be examined in light of recent pronouncements by the United States Supreme Court on the issue of whether state law shall govern the survivability of certain federal claims.
In Robertson v. Wegmann, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), the Court held that the § 1983 action there would abate in accordance with the Louisiana survivorship statute, thereby reversing *376 the Fifth Circuit Court of Appeals. The Louisiana statute provided that an action for death would survive only in favor of a spouse, children, parents, or siblings of the deceased. In Robertson, the deceased died without being survived by any of the persons named in the statute.
The survival of claims and damages allowable under the Alabama wrongful death statute was carefully scrutinized and upheld in Brown v. Morgan County, supra, "in light of the proviso posited by the Supreme Court in Robertson v. Wegmann, [supra], ... that state law is to be applied `subject to the important proviso that state law may not be applied when it is "inconsistent with the Constitution and laws of the United States."'" 518 F.Supp. 661, at 663.
Although our analysis here must go further, in view of another recent Supreme Court decision, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), and its impact on the facts in the present case, discussed ante, we agree with and adopt the reasoning and holding of the District Court in Brown, supra:
"`The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law.' Robertson, supra, [436 U.S.] at 590, 591, 98 S.Ct. at 1995. The policies underlying the Alabama wrongful death act include `creating a new cause of action, punitive in character, for the benefit of the next of kin entitled to take as distributees of his estate,' Bruce v. Collier, 221 Ala. [22] at 23, 127 So. 553 [1930], `prevention of homicides through the deterrent value of the infliction of punitive damages,' James v. Murphy, supra at 645, protecting human life, and stimulating diligence in the protection of the natural right to live. Breed v. Atlanta, B. & C.R.R. Co., 241 Ala. 640, 4 So.2d 315 (1941).
"As is readily apparent, deterrence is a goal of both the federal statutes and the Alabama act. A tortfeasor who caused death by his actions would, if found liable under the Alabama wrongful death act, face a punitive damage award designed to punish him for his wrongful act. Such an award would be imposed against tortfeasors held liable for acts causing death, thus deterring future misconduct. Thus, the Alabama policy of protecting human life by deterring future misconduct is consistent with the federal policy of preventing abuses of power. The award of punitive damages effectuates both policies. The policies of the federal statutes and the Alabama statute, are, therefore, in no way inconsistent to the extent that each furthers the policy of preventing wrongful conduct.
"The court is thus faced with this question, as plaintiff would pose it: whether the Alabama act should be rejected because it does not further the compensation policy of the federal act. The court finds that adoption of the Alabama act should not be rejected. It is clear that where the injured party is deceased, any damage award would not compensate him for his injuries, because the cruel fact is that he is no longer present to benefit from any damages awarded. No damage award could compensate him. No damage award could make him whole. An award could create a financial resource for paying the deceased's medical bills, funeral expenses, etc. Thus, the only benefit the deceased would receive would be the incidental benefit that the beneficiaries of his estate would receive a greater amount than they would if the estate had to pay the deceased's medical expenses, etc. The policy of compensation is not a factor in death cases, because the beneficiaries of such an award would be the same as the beneficiaries of an award of punitive damagesthe next of kin, or other beneficiaries of the deceased's estate. `The goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate.' Robertson v. Wegmann, *377 supra, 436 U.S. at 592, 98 S.Ct. at 1996. Thus, the policies of the civil rights statutes are fully effectuated by an award of punitive damages, and plaintiff is in no way disadvantaged by being limited to a recovery of punitive damages. The Alabama law should not be abandoned.
"... The Louisiana law was obviously more restrictive than the Alabama wrongful death act under consideration in the case sub judice. And like the Louisiana survival statute under consideration in Robertson, the Alabama death act should not be disregarded and cannot be considered `inconsistent' with federal law merely because the statute provides for recovery of only punitive damages.
"... In death cases, however, federal law is deficient. Reference must be made to state law. And, as Robertson teaches, unless the state law is unduly restrictive of the federal claim, the state law is to be applied. The foregoing discussion establishes that the Alabama act is not unduly restrictive of the federal claim.
"In summary, the court finds that federal law is deficient with respect to survival, that the Alabama wrongful death act may be adopted by reference through § 1988, that the policies of the federal civil rights statutes and the Alabama wrongful death act are not inconsistent, and that the Alabama act should be adopted in toto. Compensatory damages are not available to a plaintiff maintaining a 1983 case in reliance on the Alabama wrongful death act...." (Footnotes omitted; emphasis in original.) 518 F.Supp. at 663-665.
With regard to the contention that uniformity is necessary where the survivorship of federal causes of action is at issue, the Court in Robertson further stated, in footnote 11:
"11. In addition to referring to the policies underlying § 1983, the Court of Appeals based its decision in part on the desirability of uniformity in the application of the civil rights laws and on the fact that the federal courts have allowed survival `in other areas of particular federal concern ... where statutory guidance on the matter is lacking.' 545 F.2d at 985; see supra, at [436 U.S.] 588 [98 S.Ct. at 1994]. With regard to the latter point, however, we do not find `statutory guidance ... lacking'; § 1988 instructs us to turn to state laws, unless an `inconsistency' with federal law is found. While the courts below found such an inconsistency, we do not agree, as discussed in text supra, and hence the survivorship rules in areas where the courts are free to develop federal common lawwithout first referring to state law and finding an inconsistencycan have no bearing on our decision here. Similarly, whatever the value of nationwide uniformity in areas of civil rights enforcement where Congress has not spoken, in the areas to which § 1988 is applicable Congress has provided direction, indicating that state law will often provide the content of the federal remedial rule. This statutory reliance on state law obviously means that there will not be nationwide uniformity on these issues." (Emphasis added.) 436 U.S. 593-594, 98 S.Ct. 4997.
The plaintiff contends the Court in Brown erred in its reliance on Robertson because the Court in Robertson expressed no view "about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death," making reference to Brazier v. Cherry, supra, but not overruling that case. 436 U.S. at 594, 98 S.Ct. at 1997. Plaintiff further contends the question reserved in Robertson was answered in Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), and asserts Carlson makes it clear that federal common law allows survival of the action, notwithstanding state law. We do not read the holding in Carlson so broadly, considering the language of the Supreme Court in its opinion, ante. Carlson involved an action brought by a mother on behalf of the estate of her deceased son, alleging that he suffered personal injuries from which he died as a *378 result of the actions by petitioners, federal prison officials, in violation of his due process, equal protection, and Eighth Amendment rights. These allegations gave rise to a cause of action for damages under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). One of the issues decided by the Court in Carlson was whether, in this type of case, survival of the cause of action was governed by federal common law or by state statutes.
It is significant to note, at the outset, that the defendants in Carlson were federal officials, and in the language of its holding in Carlson, the Supreme Court clearly makes this important distinction:

"Whatever difficulty we might have resolving the question were the federal involvement less clear, we hold that only a uniform federal rule of survivorship will suffice to redress the constitutional deprivation here alleged and to protect against repetition of such conduct.
"In short, we agree with and adopt the reasoning of the Court of Appeals, 581 F.2d at 674-675 (footnote omitted):
"`The essentiality of the survival of civil rights claims for complete vindication of constitutional rights is buttressed by the need for uniform treatment of those claims, at least when they are against federal officials. As this very case illustrates, uniformity cannot be achieved if courts are limited to applicable state law. Here the relevant Indiana statute would not permit survival of the claim, while in Beard [v. Robinson, 563 F.2d 331 (CA7 1977),] the Illinois statute permitted survival of the Bivens action. The liability of federal agents for violation of constitutional rights should not depend upon where the violation occurred.... In sum, we hold that whenever the relevant state survival statute would abate a Bivens -type action brought against defendants whose conduct results in death, the federal common law allows survival of the action.'" (Emphasis added.) 446 U.S. at 23-24, 100 S.Ct. at 1474.
We hasten to point out this distinction made by the Supreme Court in Carlson, which, despite its holding, went on to distinguish and uphold Robertson v. Wegmann, supra:

"Robertson v. Wegmann, 436 U.S. 584 [, 98 S.Ct. 1991, 56 L.Ed.2d 554] (1978), holding that a § 1983 action would abate in accordance with Louisiana survivorship law is not to the contrary. There the plaintiff's death was not caused by the acts of the defendants upon which the suit was based. [Footnote 11 appeared at this point and is set out below.]
"11. Robertson fashioned its holding by reference to 42 U.S.C. § 1988, which requires that § 1983 actions be governed by `the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of [the] civil ... cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States.' Section 1988 does not in terms apply to Bivens actions, and there are cogent reasons not to apply it to such actions even by analogy. Bivens defendants are federal officials brought into federal court for violating the Federal Constitution. No state interests are implicated by applying purely federal law to them. While it makes some sense to allow aspects of § 1983 litigation to vary according to the laws of the States under whose authority § 1983 defendants work, federal officials have no similar claim to be bound only by the law of the State in which they happen to work. Bivens, 403 U.S., at 409 [, 91 S.Ct. at 2011] (Harlan, J., concurring in judgment). Moreover, these petitioners have the power to transfer prisoners to facilities in any one of several States which may have different rules governing survivorship or other aspects of the case, thereby controlling to some extent the law that would apply to their own wrongdoing. See Robertson, 436 U.S., at 592-593, [98 S.Ct. at 1996] and n. 10. Another aspect of the power to transfer prisoners freely within *379 the federal prison system is that there is no reason to expect that any given prisoner will have any ties to the State in which he is incarcerated, and, therefore, the State will have little interest in having its law applied to that prisoner...." (Emphasis added.) 446 U.S. at 24-25, 100 S.Ct. at 1474.
Thus, we are not persuaded that Carlson v. Green mandates the adoption of a federal rule of survivorship in § 1983 cases, especially where the defendants are not federal officials, but rather state or municipal officials. Therefore, we affirm the grant of summary judgment as to plaintiff's § 1983 claim for compensatory damages as a result of the personal injury and pain and suffering of the deceased prior to her death.
Next, because the plaintiff has asserted a § 1983 claim against the City of Birmingham, we must decide the question reserved in Brown v. Morgan County, supra; namely, whether this Court should permit an action for compensatory damages to survive against a municipality in light of the recent United States Supreme Court decision in City of Newport v. Fact Concerts, Inc., supra, which holds that municipalities are immune from punitive damages under § 1983. Plaintiff contends that the holding in Newport, combined with the holding in Brown, supra, which this Court has adopted today, creates an inconsistency with the Constitution and laws of the United States, calling for resort to the federal common law of survival, Carlson, supra, rather than state law. We disagree. Although, in light of City of Newport, the application of the damages and survival of actions limitations found in the Alabama wrongful death statute will in effect preclude plaintiff's "recovery" from the City of Birmingham on a federal theory, i.e. § 1983, the state law action against the city for wrongful death is still available to the plaintiff. Moreover, the state law affords a remedy beyond that now permitted under federal lawpunitive damages. Thus, the application of state law here does not, in substance, abrogate plaintiff's remedy against the city for violations of § 1983, but rather expands the recovery. Nor do we read City of Newport, supra, as a mandate to allow compensatory damages against municipalities in § 1983 suits, especially where the state law recognizes an analogous cause of action. The language of the Supreme Court in Carey v. Piphus, 435 U.S. 247, 258-259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978), is instructive:
"It is not clear, however, that common-law tort rules of damages will provide a complete solution to the damages issue in every § 1983 case. In some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right. In such cases, it may be appropriate to apply the tort rules of damages directly to the § 1983 action. See Adickes v. S.H. Kress & Co., 398 U.S. [144], at 231-232 [90 S.Ct. 1598 at 1641, 26 L.Ed.2d 142] (Brennan, J., concurring and dissenting). In other cases, the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law of torts. See Monroe v. Pape, 365 U.S., at 196, [81 S.Ct. at 488] and n. 5 (Harlan, J., concurring); id., at 250-251 (Frankfurter, J., dissenting in part); Adickes v. S.H. Kress & Co., supra, [398 U.S.] at 232 [90 S.Ct. at 1641] (Brennan, J., concurring and dissenting); Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S., at 394 [91 S.Ct. at 2003]; id., at 408-409 [91 S.Ct. at 2011] (Harlan, J., concurring in judgment). In those cases, the task will be the more difficult one of adapting common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right.
"Although this task of adaptation will be one of some delicacyas this case demonstratesit must be undertaken. The purpose of § 1983 would be defeated if injuries caused by the deprivation of constitutional rights went uncompensated simply because the common *380 law does not recognize an analogous cause of action. Cf. Jones v. Hildebrant, 432 U.S. 183, 190-191 [97 S.Ct. 2283, 2288, 53 L.Ed.2d 209] (1977) (White, J., dissenting); Sullivan v. Little Hunting Park, 396 U.S. 229, 240 [90 S.Ct. 400, 406, 24 L.Ed.2d 386] (1969). In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in questionjust as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law. We agree with Mr. Justice Harlan that `the experience of judges in dealing with private [tort] claims supports the conclusion that courts of law are capable of making the types of judgment concerning causation and magnitude of injury necessary to accord meaningful compensation for invasion of [constitutional] rights.' Bivens v. Six Unknown Fed. Narcotics Agents, supra, [403 U.S.] at 409 [91 S.Ct. at 2011] (Harlan, J., concurring in judgment)...." (Emphasis added.)
The interests sought to be protected by the Alabama wrongful death statute closely parallel the interests to be protected where death results from violations of § 1983. Thus, the purpose of § 1983 is not defeated, nor are cities insulated from liability under § 1983, because the law of Alabama does recognize an analogous cause of action, affording an appropriate remedy in death cases. Brown v. Morgan County, supra. Therefore, we affirm the grant of summary judgment with regard only to plaintiff's § 1983 claim for compensatory and punitive damages against the City of Birmingham.
Nevertheless, we do not ignore the declaration of the Court in Robertson v. Wegmann, supra, at 436 U.S. at 592, 98 S.Ct. at 1996, that "[a] state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him."
Our holding as to the nonallowability of compensatory damages makes it unnecessary to consider the issues of relation back and proper joinder of claims. Accordingly, the partial summary judgment for the defendants is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, SHORES and EMBRY, JJ., concur.
JONES, J., concurs in part and dissents in part.
ALMON, J., not sitting.
ADAMS, J., recuses himself.
JONES, Justice (concurring in part and dissenting in part):
I agree with the Court's holding and its rationale as to the individual, Officer Sands; I respectfully dissent as to its holding with respect to the City of Birmingham.
I recognize, of course, as pointed out by the majority, that, "in light of City of Newport," strict application of "the Alabama wrongful death statute will in effect preclude plaintiff's `recovery' from the City of Birmingham" under § 1983. But I do not agree that the States are exempt from § 1983's mandate on the ground that state law "recognizes an analogous cause of action."
Under this rationale, we could reject all § 1983 actions. Just as our wrongful death act affords a state remedy where death results from conduct proscribed by § 1983, our statutory law and common law affords certain remedies for personal injury resulting from the same culpable conduct. But this does not serve as a basis for rejection of § 1983 actions. In my opinion, the Supremacy Clause of the United States Constitution precludes our rejection of the § 1983 claim against the City. We should either fashion a remedy allowing recovery of compensatory damages, or we should resort to the federal common law of survival, *381 which allows compensatory damages as the appropriate relief. In any event, I would reverse the trial court's summary judgment as to both the individual defendant and the City of Birmingham.