541 So.2d 1070 (1989)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
v.
Grady I. FOX, as administrator of the estate of Emily Gail Fox, deceased.
Grady I. FOX, as administrator of the estate of Emily Gail Fox, deceased
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
87-1571, 88-42.
Supreme Court of Alabama.
March 10, 1989.
*1071 Edgar M. Elliott III and Norma Mungenast Lemley of Rives & Peterson, Birmingham, for appellant/cross-appellee.
Michael J. Evans and William L. Longshore III of Longshore, Evans & Longshore, Birmingham, for appellee/cross-appellant.
HOUSTON, Justice.
These appeals require our interpretation of Ala.Code 1975, § 32-7-23(c):
"The recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract."
Emily Gail Fox and Kim Alan Davis were killed as a result of a single-vehicle accident. Ms. Davis was driving, and Ms. Fox was a passenger in that vehicle at the time of the accident.
Ms. Davis's vehicle was insured by State Farm Automobile Insurance Company under an automobile liability policy that provided a maximum liability coverage of $25,000 per person for bodily injury or death. Ms. Fox was the daughter of Grady I. Fox and a member of his household; as such she was covered under each of his five separate single-vehicle policies issued by State Farm. Each of these policies contained uninsured/underinsured motorist coverage of $20,000 per person.
Fox, as administrator of Ms. Fox's estate, filed a complaint in the Circuit Court of Jefferson County against the administrator of Ms. Davis's estate, claiming damages for the alleged wrongful death of his daughter. After hearing testimony in a non-jury trial, the court entered a judgment in favor of Fox for $120,000, plus costs.
Because the $25,000 liability coverage available under the Davis policy was insufficient to satisfy this judgment, Fox sought to recover the balance of $95,000 from State Farm under the uninsured/underinsured motorist coverages in his five State Farm policies. State Farm conceded that Fox could recover under the uninsured motorist provisions of three of his policies, and agreed that it was liable for a total of $85,000 of the $120,000 judgment ($25,000 under the liability provision in the Davis policy, plus $60,000 under the uninsured/underinsured motorist coverages of three of Fox's policies). State Farm maintained that it was not liable for the remaining $35,000 of the judgment because of the limitation imposed by Alabama Code 1975, § 32-7-23(c).
The trial judge held that § 32-7-23(c) applied only where a policy of insurance covered more than one vehicle, that State Farm had issued five separate policies to Fox covering five separate vehicles, and that State Farm could not rely upon § 32-7-23(c) to restrict its uninsured/underinsured liability to the limits of three policies. Consequently, the judge ruled that State Farm was liable for the entire $120,000 judgment.
Prior to filing its notice of appeal, State Farm paid $85,000 of the $120,000 judgment. By this appeal, State Farm asserts *1072 that the court erred in requiring State Farm to pay the additional $35,000.
The issue raised on appeal is whether the provision in Ala.Code 1975, § 32-7-23(c), that limits an insurer's liability under the uninsured/underinsured coverage to the primary coverage plus two additional coverages applies where the insurer issues five separate single-vehicle policies rather than one multi-vehicle policy.
State Farm's argument is essentially that there is no difference between five single-vehicle policies and one insurance policy covering five vehicles.
This Court has long recognized that where the loss exceeds the limits of one uninsured motorist policy, the insured may stack other uninsured motorist policies to cover up to the actual damages sustained. General Mutual Insurance Co. v. Gilmore, 319 So.2d 675 (Ala.1975); Great Central Insurance Co. v. Edge, 292 Ala. 613, 298 So.2d 607 (1974); State Farm Mutual Automobile Insurance Co. v. Cahoon, 287 Ala. 462, 252 So.2d 619 (1971); Employer's Liability Assurance Corp. v. Jackson, 289 Ala. 673, 270 So.2d 806 (1972); Hogan v. Allstate Insurance Co., 287 Ala. 696, 255 So.2d 35 (1971); Safeco Insurance Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736 (1970).
In 1984, the Legislature amended Alabama Code 1975, § 32-7-23, by adding the following as paragraph (c):
"The recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract." (Emphasis added.)
When statutory language is unequivocal and unambiguous, the language is to be given its plain, clear, and ordinary meaning. Mann v. City of Tallassee, 510 So.2d 222 (Ala.1987); Clark v. Houston County Comm'n, 507 So.2d 902 (Ala.1987); East Montgomery Water, Sewer & Fire Protection Auth. v. Water Works & Sanitary Sewer Board, 474 So.2d 1088 (Ala.1985).
The phrases "any one contract" and "within such contract" refer to a single insurance contract. There may be no significant difference between five single-vehicle insurance policies and one insurance policy covering five vehicles, as State Farm contends. However, the Legislature clearly directed its limitation of stacking of uninsured/underinsured motorist coverage to a single policy covering multiple vehicles. These appeals do not challenge the constitutionality of this statutory provision on the basis of this limited restriction. By this, we do not mean to imply that the statute will not stand constitutional muster; we merely state why we do not address this in our opinion. The plain meaning of § 32-7-23(c) is that an injured person covered under a multi-vehicle policy may stack the uninsured/underinsured motorist coverage for additional vehicles covered within the policy, limited to "the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages."
The trial court correctly held that the phrases "any one contract" and "within such contract" referred to one contract or policy of insurance, and that the stacking limitation contained in § 32-7-23(c) did not apply to the present fact situation.
Fox, by way of a cross-appeal, argues that the trial court erred in refusing to award prejudgment interest of six percent (6%) on the $95,000 underinsured motorist judgment.
Prejudgment interest is awarded in Alabama only when the amount due is certain or capable of being made certain. See Grand Bay Land Co. v. Simpson, 207 Ala. 303, 306, 92 So. 789 (1922); Richards v. General Motors Corp., 461 So.2d 825 (Ala. Civ.App.1984); Roe v. Baggett Transportation Co., 326 F.2d 298 (5th Cir.1963).
In the instant case, there was no evidence that State Farm knew or could have known at the time it was notified of Fox's claim for the wrongful death of his daughter that the damages against Ms. Davis's estate would exceed $25,000. Fox's underinsured *1073 motorist claim was based entirely on his wrongful death action against Ms. Davis's estate. The damages were punitive damages only. See, e.g., Tatum v. Schering Corp., 523 So.2d 1042 (Ala.1988).
In the present case, there was no offer of proof by Fox of the amount of State Farm's liability under the underinsured motorist coverage. With only punitive damages recoverable in wrongful death cases, it is doubtful that in such cases the amount of an insurer's liability under underinsured motorist coverage can be proven with the specificity necessary to recover prejudgment interest from the insurer. This would not be the first time that this Court's peculiar interpretation of the damages aspect of our wrongful death statute has potentially deprived a claimant of a right the claimant might have had if personal injury, and not death, had resulted. See Aetna Casualty & Surety Co. v. Beggs, 525 So.2d 1350, 1353 (Ala.1988); Carter v. City of Birmingham, 444 So.2d 373 (Ala. 1983), cert. denied, 467 U.S. 1211, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984).
The amount, if any, that State Farm owed Fox under his underinsured motorist coverage in his insurance policies was not capable of being ascertained at the time State Farm received notice of the claim. The trial court did not err in refusing to grant prejudgment interest.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES and ADAMS, JJ., concur.
JONES and STEAGALL, JJ., dissent.
JONES, Justice (dissenting).
I respectfully dissent.
I begin by conceding that, without citing Travelers Insurance Co. v. Jones, 529 So. 2d 234 (Ala.1988), the Court in the instant case faithfully follows the rationale of Travelers: that the statutory term "any one contract of automobile insurance" means that each separate automobile liability policy issued by the insurer is to be treated as a separate contract of insurance. I agree that in other contexts this construction would be entirely appropriate. But, here, the very purpose of Ala.Code, § 32-7-23, is being thwarted by such a construction.
In my opinion, the legislature could not have intended to create a "Russian roulette" game of chance. The operative effect of the statute can be carried out with some degree of consistency and predictability only if the statute treats all like coverages between the same parties (the insurer and the insured) as one contract of insurance. Otherwise, sophisticated insurers (and insureds, as well), in considering each application for coverage, must go through the mental exercise of deciding whether to issue separate policies to cover each vehicle owned by the insured, and thus avoid the risk of stacking uninsured motorist coverages as to passengers (as in Travelers) but, at the same time, assume the risk of stacking, without limitations, such coverage for other insureds for each insured vehicle (as in the instant case).
Quite simply, the legislature could not normally have intended different coverages depending upon the choice of using one piece of paper as opposed to several pieces of paper. What possible policy consideration would have dictated such arbitrary results? I suggest there are none.
Why then did the legislature say "any one contract"? Only a cursory knowledge of the insurance industry is required to answer this question. If the insured owns two separate classes of vehicles requiring different kinds of coverage (commercial trucks and non-commercial automobiles, for example), coverage for each such class of vehicles would constitute "one contract" of insurance. If the insured places his coverage of two vehicles so that each is covered by different insurers, each policy constitutes a separate contract of insurance. But an unintended application of the statute results where the same coverage applicable to each of several vehicles within the same class is treated as different contracts of insurance simply because they are single-vehicle policies.
*1074 Then, too, there are other practical reasons for issuing separate or single-vehicle policies other than some conscious effort on the part of the insurer or the insured to circumvent the operative effect of § 32-7-23(c). For example, a multiple-vehicle policy will ordinarily reflect a single premium due-date for all coverages and could quite possibly work an undue hardship on the insured. Further, the acquisition of new or replacement vehicles rarely occurs on the anniversary date of the policy; thus, it is feasible and practicable, because of different dates of coverages, to issue separate or single-vehicle policies. These valid, practical reasons for not having one multiple-vehicle policy should not obviate the legislative will to limit stacking to the "primary coverage" plus "two additional coverages."
It is ironic, if not tragic, that we can not agree upon what seems to be the clear intent of the legislature. This piece of legislation began as a single-subject bill to increase the minimum required limits of automobile liability insurance (from $10,000/$20,000 to $20,000/$40,000). An amendment was offered to eliminate "stacking" of coverages where the insured had several vehicles covered by the same insurer.
It was in this posture that the art of compromise in the legislative process played its mystical hand. What eventually emerged (as is often the case) was a very sensible and workable Act that accomplished two substantial changes in the law. By the use of the term "any injured person," the Act abolished the distinction between classes of insureds for uninsured motorist protection purposes. Travelers Insurance Co. v. Jones, supra. (In my opinion, as my special concurring opinion in Travelers indicates, that case reached the right result, but for the wrong reason.) This meant that the term, as used in the original Act, "for the protection of persons insured thereunder" was no longer applicable to distinguish between persons insured under the liability provisions of the policy and non-insured persons (passengers, for example). White v. Georgia Casualty & Surety Insurance Co., 520 So.2d 140 (Ala. 1987).
The second change put a cap on "stacking." The legislature recognized that this cap, of course, had to be restricted to like coverages provided by the same insurer, thus the use of the term "under one contract of insurance." It seems to me that the legislature could hardly have stated its purpose more simply or more accurately.
Have we forgotten the most fundamental of all rules of statutory construction? If one construction is nonsensical and unworkable and another is both sensible and workable, the Court will adopt the construction that makes sense and works. Ex parte Hayes, 405 So.2d 366 (Ala.1981). The Court's construction of this statute forces upon the insurance industry, as well as upon the insureds, the abandonment of legitimate and practical choices between multiple-vehicle policies and single-vehicle policies, because any such choice might produce unintended results with respect to uninsured motorist coverages as statutorily mandated.
STEAGALL, Justice (dissenting).
While it is true that this Court in Travelers Insurance Co. v. Jones, 529 So.2d 234 (Ala.1988), allowed the plaintiffs to stack coverages that were contained in one policy, the Court expressly limited Travelers to its facts and did not address the question of stacking under separate policies. That question is now before the Court, and I respectfully dissent from the majority's holding.
Regardless of the number of policies, I believe the legislature intended that stacking be limited to like coverages provided by the same insurer. To hold that like coverages between the same parties are not "one contract of insurance" under the statute would violate the "spirit and the intention of the law." Hawkins v. City of Birmingham, 239 Ala. 185, 194 So. 533 (1940).
I would, therefore, restrict the stacking of policies in this case to three policies, pursuant to Ala.Code 1975, § 32-7-23(c).