**Lois WEEKS, Plaintiff,**

v.

**Sheriff Thomas BENTON, et al., Defendants.**

**Civ. A. No. 86–0389–BH.**

United States District Court,
S.D. Alabama, S.D.

Dec. 12, 1986.

Glenda G. Cochran, James R. Cockrell, Birmingham, Ala., for plaintiff.

Reggie Copeland, Jr., Mobile, Ala., Taylor D. Wilkins, Jr. (lead counsel), Bay Minette, Ala., for defendants.

## ORDER

HAND, Chief Judge.

This action is brought pursuant to 42 U.S.C. § 1983 and § 1985 for the death of Glennon Anthony Weeks, who died on or about September 10, 1985 while incarcerated in the Baldwin County Jail. The action is brought by Lois Weeks as administratrix of the decedent's estate. The defendants include Sheriff Thomas Benton, Jailer James Hartner, Nurse Elizabeth Sellers, various commissioners of Baldwin County, and Baldwin County. The first three defendants are named in both their individual and official capacities; the commissioners are named only in their official capacity. Various fictitious defendants are also named.

In a nutshell, the complaint alleges that plaintiff's decedent died as a result of the failure of responsible officials to provide him with adequate medical care. A custom or policy of inadequate training and supervision is attributed to the sheriff and to Baldwin County and its commissioners. The decedent was allegedly deprived of his rights under the fourth, fifth, eighth, and fourteenth amendments to the Constitution of the United States. A variety of state tort law claims have been asserted alongside the claims under § 1983 and § 1985.

Presently pending before the Court is defendants' amended motion to dismiss. The motion now contains six parts, each of which is actually a separate motion. Each motion will be addressed individually and all of the motions will be treated as addressed to the entire complaint as most recently amended.

### I. MOTION TO STRIKE FICTITIOUS DEFENDANTS

 The first part of the motion to dismiss seeks to strike all references to fictitious defendants from plaintiff's complaint. The motion to strike is GRANTED. Fictitious party practice is not authorized by the Federal Rules of Civil Procedure or any other federal statute. *See Fifty Associates v. Prudential Insurance Co.,* 446 F.2d

1187, 1191 (9th Cir.1970); *Wiltsie v. California Department of Corrections*, 406 F.2d 515, 518 (9th Cir.1969); *Tolefree v. Ritz*, 382 F.2d 566, 567 (9th Cir.1967).

## II. MOTION TO DISMISS CLAIMS UNDER § 1985

■ Defendants have moved to dismiss all claims brought pursuant to 42 U.S.C. § 1985 because the complaint does not allege that defendants were motivated by any discriminatory animus. This motion is GRANTED. Proof of racial or other class-based invidiously discriminatory animus is an essential requirement to the maintenance of an action under § 1985(3). *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1971). Plaintiff's complaint makes no allegations of racial or class-based discriminatory animus lying behind defendants' actions. Therefore, all claims under § 1985 are DISMISSED.

## III. MOTIONS TO DISMISS THE BALDWIN COUNTY COMMISSIONERS

Two separate grounds for dismissing the Baldwin County commissioners have been offered. These motions are appropriately directed toward not only the commissioners but also the county itself. This is because suits against officials in their official capacity are to be treated as suits against the entities under which the officials are employed. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611, 635 n. 55 (1978). Thus, suits against any of Baldwin County's commissioners in their official capacities are, in effect, suits against Baldwin County. Therefore, the Court will treat the motions to dismiss the commissioners as applicable to Baldwin County as well.

## A. THEORY OF COMMISSIONERS' LIABILITY UNDER § 1983

■ The first ground for dismissing the commissioners and the county is that their liability is predicated solely on the theory of respondeat superior. Governmental entities cannot be held liable under § 1983 under a respondeat superior theory alone. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 1036, 56 L.Ed.2d 611, 635 (1978). Plaintiff responds by arguing that the county and commissioners should be held liable for their own gross negligence and deliberate indifference to their training and supervisory responsibilities. The decedent's death is attributed to their failure to supervise and operate the jail properly.

This dispute cannot be resolved without first clarifying the basis of municipal liability under § 1983. Unfortunately, the United States Supreme Court and the Eleventh Circuit Court of Appeals have given precious little guidance on this matter, and what guidance that has been provided is confusing and often contradictory.

The Supreme Court first established municipal liability under § 1983 in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Court in *Monell* held that local governing bodies can be sued under § 1983 where an allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. at 2035–36, 56 L.Ed.2d at 635. Additionally, such governmental entities "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 691–92, 98 S.Ct. at 2036, 56 L.Ed.2d at 635–36. The custom or policy must be the "moving force" behind the alleged unconstitutional violation. *Id.* at 694, 98 S.Ct. at 2038, 56 L.Ed.2d at 638. A municipality cannot be held liable under § 1983 on a respondeat superior theory,

solely because it employs a tortfeasor. *Id.* at 691, 98 S.Ct. at 2036, 56 L.Ed.2d at 635.

Numerous Supreme Court decisions since *Monell* have attempted to clarify the limits of municipal liability under § 1983. *See, e.g., Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673, 685 (1980) (municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983); *City of Newport v. Fact Concerts,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616, 634 (1981) (municipality is immune from punitive damages under § 1983); *Oklahoma City v. Tuttle,* 471 U.S. 808, 821, 105 S.Ct. 2427, 2435, 85 L.Ed.2d 791, 802 (1985) (custom or policy on which municipal liability is based cannot be inferred solely from a single, isolated instance of police misconduct); *Pembaur v. City of Cincinnati,* —— U.S. ——, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452, 462 (1986) (municipal liability may be imposed for a single decision by a municipal policymaker under appropriate circumstances). In *Pembaur,* the Court stated that "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." —— U.S. at ——, 106 S.Ct. at 1300, 89 L.Ed.2d at 465. This language is not quite as absolute, however, as it first appears. The *Pembaur* Court also stated, while referring to the "custom or usage" language in § 1983, that "[a] § 1983 plaintiff ... may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage.' " *Id.* at —— n. 10, 106 S.Ct. at 1299 n. 10, 89 L.Ed.2d at 464 n. 10. Although

these passages are difficult to reconcile, it appears that although municipal liability must be based on a "deliberate choice," the choice need not be expressly stated or constitute an affirmative act. An unheralded but conscious failure to perform a duty may constitute "a deliberate choice to follow a course of action."

Various circuit courts of appeal have struggled to define more fully what is meant by custom or policy. Some courts have held that municipal liability can be established by showing that the governmental entity exhibited "gross negligence" or "deliberate indifference" in failing to train and supervise properly its employees to prevent unconstitutional actions. *See, e.g., Tuttle v. Oklahoma City,* 728 F.2d 456, 460 (10th Cir.1984) (municipality could be held liable where inadequate training, supervision, and disciplining of police officers amounted to gross negligence and deliberate indifference to the constitutional rights of the decedent), *rev'd on other grounds,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.), (county could be held liable if the failure to supervise or the lack of a proper training program was so severe as to reach the level of gross negligence or deliberate indifference to the deprivation of plaintiff's constitutional rights), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *see also Gilmere v. City of Atlanta,* 774 F.2d 1495, 1503 n. 9 (11th Cir.1985) (cases cited therein) (hereinafter referred to as *Gilmere II* ), *cert. denied,* —— U.S. ——, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). The eleventh circuit, however, has been reluctant to adopt a gross negligence standard. That standard was expressly rejected by a three judge panel in *Gilmere v. City of Atlanta,* 737 F.2d 894, 904 (11th Cir.1984) (hereinafter referred to as *Gilmere I* ).[1] After a re-

---

1. In rejecting the gross negligence standard, the *Gilmere I* court stated: " 'Gross negligence' or 'deliberate indifference' is simply not the proper test for adjudging a due process section 1983 claim against a municipality." *Gilmere v. City of Atlanta,* 737 F.2d 894, 904 (11th Cir.1984). To the extent that the *Gilmere I* court is stating

that a fourteenth amendment due process claim cannot be predicated on the negligence of a government official, the Court is correct. See *Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* —— U.S. ——, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). As the *Daniels* Court pointed out, proof of the

hearing en banc, however, the eleventh circuit indicated that case law did not support a rejection of the gross negligence standard. *Gilmere II,* 774 F.2d at 1503. Nevertheless, the court declined to adopt such a standard, finding it unnecessary to reach that issue on the facts of that case. *Id.* at 1504.

Although it has declined to adopt expressly a standard of gross negligence, the Eleventh Circuit does appear to have implicitly adopted a standard of "deliberate indifference." In *Anderson v. City of Atlanta,* 778 F.2d 678, 685 (11th Cir.1985), the eleventh circuit upheld municipal liability based on a jury instruction that required a finding of "a pattern or practice of deliberate indifference." *Id.* at 685. Specifically, the court held that municipal liability under § 1983 could result from a finding that the municipality had a pattern or practice of indifference to the understaffing of a municipal jail, if the decedent's death resulted from the understaffing. *Id.* at 685–86. Municipal liability was appropriate under those circumstances even though no individual police officer had been found guilty of any wrongdoing. *Id.* at 686.

The United States Supreme Court has been skeptical of basing municipal liability under § 1983 on gross negligence. In *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Court, speaking through Justice Rehnquist, stated:

> We express no opinion on whether a policy that itself is not unconstitutional, such as the general "inadequate training" alleged here, can ever meet the "policy" requirement of Monell. In addition, even assuming that such a "policy" would suffice, it is open to question whether a policymaker's "gross negligence" in establishing police training practices could establish a "policy" that constitutes a "moving force" behind subsequent unconstitutional conduct, or whether a more conscious decision on the part of the policymaker would be required.

*Id.* at 824 n. 7, 105 S.Ct. at 2437 n. 7, 85 L.Ed.2d at 804 n. 7.[2] The Court, however, did not overturn the Tenth Circuit's adoption of a gross negligence standard of municipal liability.

On the other hand, the Supreme Court has indicated in other decisions that § 1983 contains no state of mind requirement. In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the court stated:

> Nothing in the language of § 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights.... [S]imply because a wrong [is] negligently as opposed to intentionally committed [does] not foreclose the possibility that such action could be brought under § 1983.... Section 1983, unlike its criminal counterpart, 18 U.S.C. § 242, has never been found by this Court to contain a state-of-mind requirement.

underlying constitutional violation in a § 1983 action may require that more than mere negligence be established. The requirement is inherent in the constitutional claim itself, however, and not in § 1983. *Daniels,* —— U.S. at ——, 106 S.Ct. at 664, 88 L.Ed.2d at 666. *Daniels* and *Davidson* do not stand for the proposition that no actions for negligence can ever be brought under § 1983. Furthermore, the *Daniels* Court expressly recognized that proof of deliberate indifference to a prisoner's serious illness or injury is sufficient to establish cruel and unusual punishment under the eighth amendment. *Daniels,* —— U.S. at ——, 106 S.Ct. at 664, 88 L.Ed.2d at 666. Such a claim has been raised in the case at bar.

**2.** It is worth noting, however, that Justice Rehnquist was writing for a four member plurality. Three other members of the Court have no objection to basing municipal liability on a custom or policy that is not unconstitutional on its face. *Oklahoma City v. Tuttle,* 471 U.S. 808, 824, 825 n. 8, 105 S.Ct. 2427, 2437, 2441 n. 8, 85 L.Ed.2d 791, 805, 810 n. 8 (1985) (Brennan, Marshall, and Blackmun, JJ., concurring); *see also id.* at 834, 105 S.Ct. at 2441, 85 L.Ed.2d at 811 (Stevens, J., dissenting). At least four members of the Court apparently have no objection to a gross negligence standard for municipal liability under § 1983 as long as it is not inferred from a single isolated incident of police misconduct. Justice Powell did not participate in the decision.

*Id.* at 534, 101 S.Ct. at 1912, 68 L.Ed.2d at 427 (Rehnquist, J.).[3] This statement has been reaffirmed in a more recent decision of the Supreme Court. *See Daniels v. Williams,* — U.S. —, —, 106 S.Ct. 662, 664, 88 L.Ed.2d 662, 666 (1986). It would seem inconsistent to conclude that § 1983 has no intent requirement and, at the same time, argue that municipal liability under § 1983 requires proof of more than gross negligence. Any standard higher than gross negligence would have to require some form of intent.

After putting much study and thought into the matter, this Court has been unable to reconcile adequately the various and often contradictory opinions on the basis for municipal liability under § 1983. Perhaps the best that can be done is to choose a course that has not been clearly rejected by either the eleventh circuit or the Supreme Court. Therefore, this Court will require that plaintiff establish a pattern or practice by the Baldwin County commissioners of deliberate indifference to any duties that they may have had to provide, supervise, or train employees to meet the medical needs of persons confined in the Baldwin County Jail. Such a pattern or practice would be sufficient to demonstrate the existence of a "custom or usage" or policy of inadequate training or supervision within the meaning of § 1983 and *Monell.* Plaintiff must also establish that the deliberate indifference on the part of the commissioners was the moving force behind any violation of the decedent's constitutional rights that may have occurred. Finally, the requisite elements of the underlying constitutional violation must be demonstrated.

For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted. *Jenkins v.*

*McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1949, 23 L.Ed.2d 404, 416 (1969). The complaint should be liberally construed in favor of the plaintiff. *Id.* The complaint should not be dismissed unless it appears that plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Id.* at 432, 89 S.Ct. at 1849, 23 L.Ed.2d at 422; *see also Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103, 104 (11th Cir.1982).

The Court concludes that plaintiff's complaint states a colorable cause of action under 42 U.S.C. § 1983 based upon the standards enunciated above. Plaintiff has alleged that the commissioners and sheriff of Baldwin County had a custom or policy of inadequate training, supervision and staffing of the Baldwin County jail. As a result, it is alleged that these defendants were grossly negligent and deliberately indifferent to the likely violation of the decedent's constitutional rights. The decedent died in jail of a heart attack after allegedly being deprived of necessary medication and after his pleas for assistance were allegedly ignored. Plaintiff claims that the defendants were deliberately indifferent to the serious medical needs of the decedent, thus violating his eighth amendment right to be free from cruel and unusual punishment. *See Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251, 260–61 (1976). Moreover, plaintiff alleges that the defendants were in violation of an injunction issued by this Court requiring that they maintain a specified number of guards at the jail capable of handling inmate emergencies. Given these allegations, this Court cannot conclude at this point that the plaintiff will be unable to prove any set of facts which would entitle

---

**3.** Arguably, this statement in *Parratt* is inapposite where municipal liability is concerned. *Parratt* involved due process claims brought through § 1983, apparently against prison guards in their individual capacity. *Daniels* involved similar claims. Because no governmental entities were being sued, the custom or policy problem under *Monell* never arose. Arguably, *Monell*'s custom or policy requirement

necessitates proof of some type of intentional action where municipalities are involved, even though § 1983 has no intent requirement with respect to individuals. To the extent, however, that a municipality or other governmental entity is a "person" under § 1983, there appears to be no reason why § 1983, on its face, should require proof of any higher level of animus on the part of a municipality than any other individual.

her to relief.[4] Therefore, defendants' motion to dismiss because the County's liability is based solely in a respondeat superior theory is DENIED.

### B. APPLICABILITY OF ALABAMA WRONGFUL DEATH STATUTE THROUGH 42 U.S.C. § 1988

■ Defendants' second argument for dismissing the commissioners is that no relief can be granted against them under § 1983. Defendants argue that the Alabama wrongful death statute, which permits the recovery only of punitive damages, must be applied through 42 U.S.C. § 1988 to permit this action to survive the decedent's death. Because punitive damages cannot be recovered against a governmental entity under § 1983, however, no relief can be granted against Baldwin County or it's commissioners in their official capacity. Plaintiff responds that the claims under § 1983 should be permitted to survive through Alabama's wrongful death statute, but that the court should permit the recovery of compensatory damages against the commissioners to fulfill the policy of deterrence under § 1983.

Section 1983 has no provision for the survival of actions for constitutional violations that result in the death of the victim. Section 1988 of Title 42, however, provides that, in civil rights actions, when federal law is deficient, the relevant law of the state in which the action is brought shall be applied, unless it is inconsistent with federal law.[5] State survival statutes and wrongful death statutes have been consistently applied through § 1988 to actions under § 1983. *See, e.g., Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); *Brazier v. Cherry,* 293 F.2d 401 (5th Cir.1961) *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); *Brown v. Morgan County,* 518 F.Supp. 661 (N.D.Ala. 1981); *James v. Murphy,* 392 F.Supp. 641 (M.D.Ala.1975); *Pollard v. United States,* 384 F.Supp. 304 (M.D.Ala.1974); *Carter v. City of Birmingham,* 444 So.2d 373 (Ala. 1983), *cert. denied,* 467 U.S. 1211, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984). *See generally* Annot., 42 A.L.R.Fed. 163 (1979).

Alabama's wrongful death statute is found at § 6–5–410 of the Code of Alabama.[6] This statute has been interpreted to authorize the recovery only of punitive damages. *See Simmons v. Pulmonsan Safety Equipment Corp.,* 471 F.Supp. 999, 1001 (S.D.Ala.1979); *James,* 392 F.Supp. at 645; *Carter,* 444 So.2d at 375; *Geohagan v. General Motors Corp.,* 291 Ala. 167, 279 So.2d 436, 438–39 (1973). Thus, the application of the Alabama wrongful death statute to § 1983 actions through § 1988 would normally limit recoverable damages to punitive damages only.

---

**4.** The fact pattern in the case at bar is remarkably similar to the facts in *Anderson v. City of Atlanta,* 778 F.2d 678 (11th Cir.1985). *See* text following note 1, *supra.*

**5.** Section 1988 reads, in pertinent part, as follows:

> The jurisdiction in civil ... matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS", ... for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ...

cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause....

42 U.S.C. § 1988.

**6.** Section 6–5–410 provides, in pertinent part:

> A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the state of Alabama, and not elsewhere, for the wrongful act, omission or negligence of any person, persons or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, provided the testator or intestate could have commenced an action for such wrongful act, omission or negligence if it had not caused death.

*Ala. Code* § 6–5–410 (1975).

Complications arise, however, when such actions are brought against municipalities or counties in Alabama. The United States Supreme Court has held, in *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616, 634 (1981), that municipalities are immune from punitive damages under § 1983. Although the Court in *Fact Concerts* referred only to municipalities, the decision has generally been considered to apply to counties and the other local governmental entities as well. *See, e.g., Kolar v. County of Sangamon,* 756 F.2d 564, 567 (7th Cir. 1985); *Hart v. Walker,* 720 F.2d 1443, 1444 (5th Cir.1983); *Heritage Homes v. Seekonk Water District,* 670 F.2d 1 (1st Cir.), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (1982). Certainly the Supreme Court's historical and policy reasons for not holding municipalities liable for punitive damages under § 1983 apply with equal force to county governments. *See Fact Concerts,* 453 U.S. at 259–71, 101 S.Ct. at 2756–62, 69 L.Ed.2d at 627–35. Thus, while the Alabama wrongful death statute provides only for the recovery of punitive damages, such damages cannot be recovered against a county in a § 1983 action. If the Alabama wrongful death statute is applied strictly in the case at bar, plaintiff will be unable to recover any damages under the claims against Baldwin County and its commissioners in their official capacity.

Section 1988 does, however, provide a potential way out of this dilemma. Under § 1988, courts may decline to apply state law if it is inconsistent with the Constitution and laws of the United States. *See* 42 U.S.C. § 1988. The Supreme Court, in *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), has provided some guidance on how to determine whether state law is inconsistent with federal law.

*Robertson* involved a § 1983 action for alleged bad faith prosecutions by a district attorney of Orleans Parish, Louisiana. The plaintiff died while the action was pending, leaving no close relatives as survivors. The executor of the decedent's estate was substituted as plaintiff. Louisiana survivorship law, however, provided that the action survived only in favor of the spouse, children, parents, or siblings of the decedent and could not be maintained by his personal representative. Thus, the application of Louisiana survivorship law would cause the action to abate. The district court and the Fifth Circuit Court of Appeals both held that the Louisiana law was inconsistent with the remedial purposes of § 1983. A federal common-law rule was established to allow the action to survive. The Supreme Court in *Robertson* reversed and applied the Louisiana law, which resulted in the abatement of the action. The Court carefully confined its holding, however, to the unique facts of the case.

The *Robertson* Court began its analysis by stating:

> In resolving questions of inconsistency between state and federal law raised under § 1988, courts must look not only at particular federal statutes and constitutional provisions, but also at "the policies expressed in [them]." ... *Of particular importance is whether application of state law "would be inconsistent with the federal policy underlying the cause of action under consideration."*

436 U.S. at 590, 98 S.Ct. at 1995, 56 L.Ed.2d at 561 (citations omitted; emphasis added). The Court noted that the policies underlying § 1983 include "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Id.* at 591, 98 S.Ct. at 1995, 56 L.Ed.2d at 561. Neither of those policies was undermined by the application of the Louisiana survival statute, even though the § 1983 action abated under the circumstances of that case. The Court found that "[t]he goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate." *Id.* at 592, 98 S.Ct. at 1996, 56 L.Ed.2d at 562. The Court further stated, however, that "[t]his does not, of course, preclude survival of a § 1983 action when

such is allowed by state law, ... nor does it preclude recovery by survivors who are suing under § 1983 for injury to their own interests." *Id.* at 592, n. 9, 98 S.Ct. at 1996 n. 9, 56 L.Ed.2d at 562 n. 9. Similarly, the policy of deterrence of official misconduct was not seriously undermined by the abatement of that particular action. As the Court stated:

> [G]iven that most Louisiana actions survive the plaintiff's death, the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, *at least in situations in which there is no claim that the illegality caused the plaintiff's death.* A state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him.

*Id.* at 592, 98 S.Ct. at 1996, 56 L.Ed.2d at 562 (emphasis added). The Court concluded that the abatement of that action, under those peculiar circumstances, would not increase the likelihood that Louisiana officials would commit civil rights violations.[7] *Id.* at 592, 98 S.Ct. at 1996, 56 L.Ed.2d at 562.

The fact that the application of the Louisiana survival statute in the *Robertson* case ultimately resulted in the abatement of the § 1983 action did not, in and of itself, mean that the survival statute was inconsistent with the policies underlying § 1983. As the *Robertson* Court pointed out,

> [a] state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the

plaintiff, and its source would be essentially irrelevant. But § 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby.

*Id.* at 593, 98 S.Ct. at 1996–97, 56 L.Ed.2d at 563. Rather, correct analysis requires a determination of whether the application of a state statute in a particular case has the result not merely of causing the plaintiff's claim to fail, but also of undermining the policies of compensation and deterrence underlying § 1983. As the *Robertson* Court stated in its conclusion:

> Our holding today is a narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and *in which the particular application of state survivorship law,* while it may cause abatement of the action, *has no independent adverse effect on the policies underlying § 1983....* We intimate no view, moreover, about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death.

*Id.* at 594, 98 S.Ct. at 1997, 56 L.Ed.2d at 563 (emphasis added).

A strict application of the Alabama wrongful death statute in cases involving municipal or county liability cannot be justified under the *Robertson* Court's analysis. The Alabama statute provides for the recovery only of punitive damages, but municipalities and counties are immune from these damages in actions under § 1983. Thus, the strict application of the Alabama statute in such cases would result in the complete immunization of those entities from damages, at least in cases where the decedent's death resulted from their wrongful acts. Alabama municipalities

---

7. The Court, explaining itself in a footnote, stated:

> In order to find even a marginal [increase in the propensity of Louisiana officials to violate civil rights] as a result of Louisiana's survivorship provisions, one would have to make the rather farfetched assumptions that a state official had both the desire and the abili-

ty deliberately to select as victims only those persons who would die before the conclusion of the § 1983 suit (for reasons entirely unconnected with the official illegality) and who would not be survived by any close relatives. *Robertson,* 436 U.S. at 592 n. 10, 98 S.Ct. at 1996 n. 10, 56 L.Ed.2d at 562 n. 10.

and counties would know, in advance, that they would never be monetarily liable under § 1983 for acts that cause deprivations of constitutional rights as long as the victims die. The policy of deterrence of official misconduct that underlines § 1983 would obviously be severely undermined if the Alabama wrongful death statute is applied in a way that eliminates municipal and county liability in such cases.[8] Moreover, § 1983's policy of compensating the victims of official misconduct would also be undermined. The *Robertson* Court specifically noted that its decision was not intended to "preclude recovery by survivors who are suing under § 1983 for injury to their own interests." 436 U.S. at 592 n. 9, 98 S.Ct. at 1996 n. 9, 56 L.Ed.2d at 562 n. 9. The decedent in *Robertson* left no immediate survivors, so the executor was suing only on behalf of the estate. The executrix in the case at bar, however, is the sister of the decedent and he is also survived by his wife. His survivors are entitled to seek recovery for their losses as a result of his death.[9]

The defendants have cited four cases for the proposition that the Alabama wrongful death statute should be applied in § 1983 actions to permit the recovery only of punitive damages, even if that application re-

sults in no damages being recoverable against a municipality or county. *See Brown v. Morgan County*, 518 F.Supp. 661 (N.D.Ala.1981); *James v. Murphy*, 392 F.Supp. 641 (M.D.Ala.1975); *Pollard v. United States*, 384 F.Supp. 304 (M.D.Ala. 1974); *Carter v. City of Birmingham*, 444 So.2d 373 (Ala.1983), *cert. denied*, 467 U.S. 1211, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984). This Court does not agree, however, that these cases provide good authority for defendants' proposition. The *Pollard* Court, for example, held only that the Alabama wrongful death statute should be applied through § 1988 to actions under federal civil rights statutes in Alabama. 384 F.Supp. at 306. The *Murphy* court agreed and further held that a § 1983 complaint stating claims for compensatory damages was insufficient because only punitive damages are recoverable under the Alabama statute. 392 F.Supp. at 645. Both of these cases, however, were pre-*Monell* decisions, dealing only with the individual liability of government officials. Therefore, neither decision properly addressed the application of the Alabama wrongful death act in circumstances where municipal or county liability is alleged.

The opinion in *Brown v. Morgan County* does not clearly indicate who the parties

---

**8.** The *Robertson* Court apparently anticipated this problem. The Court repeatedly emphasized that its decision to apply the Louisiana statute to the detriment of the plaintiff's case might be inappropriate in cases where the alleged misconduct caused the plaintiff's death. The Court stated that "the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, at least in situations in which there is no claim that the illegality caused the plaintiff's death." *Robertson v. Wegmann*, 436 U.S. 584, 592, 98 S.Ct. 1991, 1996, 56 L.Ed.2d 554, 562 (1978). The Court further stated: "We intimate no view ... about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death." *Id.* at 594, 98 S.Ct. at 1997, 56 L.Ed.2d at 563.

**9.** The Alabama wrongful death statute provides that "[t]he damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions." *Ala. Code* § 6–5–410(c) (1975). The Alabama Su-

preme Court has held that damages recovered under § 6–5–410 are not subject to administration and do not become a part of the deceased's estate. *United States Fidelity & Guaranty Co. v. Birmingham Oxygen Service*, 290 Ala. 149, 274 So.2d 615, 621 (1973). More recently, the Alabama Supreme Court has also stated that "[w]hile § 6–5–410 of the Alabama Code requires a 'personal representative' of the decedent to commence a wrongful death action, the real parties in interest, and the intended beneficiaries under the statute, are the heirs of the decedent determined by the statute of distribution." *Blansit v. Cornelius & Rush Coal Co.*, 380 So.2d 859, 861 (Ala.1980); *see also Baggett v. Sellers*, 282 Ala. 235, 210 So.2d 796, 799 (1968); *Riddlesperger v. United States*, 406 F.Supp. 617, 620–21 (N.D.Ala.1976). Thus, the present action by Lois Weeks, as administratrix of the decedent's estate, is really brought on behalf of the decedent's survivors, and is not merely a suit by "an executor of the deceased's estate" on behalf of the estate, as was the suit in the *Robertson* case. *Robertson v. Wegmann*, 436 U.S. 584, 592, 98 S.Ct. 1991, 1996, 56 L.Ed.2d 554, 562 (1978).

were or what the suit was about, but some wrongful death claims under § 1983 had been raised and Morgan County was apparently a defendant. The court was addressing a motion to strike plaintiff's claim for compensatory damages on the ground that the Alabama wrongful death statute, applied through 42 U.S.C. § 1988, limited recovery to punitive damages. In attempting to apply the *Robertson* Court's analysis, the *Brown* court compared the policies behind § 1983 with the policies behind Alabama's wrongful death statute. Finding that a policy of deterrence of misconduct was behind both statutes, the *Brown* court concluded that the Alabama statute was consistent with federal law within the meaning of § 1988. 518 F.Supp. at 663–65.

The Supreme Court in *Robertson,* however, never attempted to compare the purposes underlying § 1983 with the purposes behind the Louisiana survival statute. Rather, the Court looked at that "particular application of state survivorship law" to determine whether it had any "independent adverse effect on the policies underlying § 1983." 436 U.S. at 594, 98 S.Ct. at 1997, 56 L.Ed.2d at 563. When the application of the Alabama wrongful death statute's limitation of damages results in the complete immunization of a municipality or county from liability under § 1983, one can hardly conclude that the statute is consistent with federal law. *See* text preceding note 8, *supra.*

The *Brown* court may, however, have been assuming that the Supreme Court's decision in *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616, 634 (1981), which held that municipalities are immune from punitive damages under § 1983, did not apply to counties. In a footnote, the *Brown* court noted that the interaction of the Alabama statute and the *Fact Concerts* decision would effectively bar any recovery against municipalities under § 1983 for deaths that they caused. The court declined to address that question. *Brown,* 518 F.Supp. at 664 n. 3. Decisions since *Brown,* however, have established that counties and other local governmental entities are also immune from punitive damages under § 1983. *See, e.g., Kolar v. County of Sangamon,* 756 F.2d 564, 567 (7th Cir.1985); *Hart v. Walker,* 720 F.2d 1443, 1444 (5th Cir.1983); *Heritage Homes v. Seekonk Water Dist.,* 670 F.2d 1 (1st Cir.), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (1982).

If the *Brown* court intended to permit the recovery of punitive damages against Morgan County, then its conclusion that the Alabama wrongful death statute was not inconsistent with federal law may have been correct in that particular case. The *Robertson* Court's test, however, must be reapplied in each particular case. In concluding that the Alabama wrongful death statute is inconsistent with federal law in the case at bar, this Court is actually answering the question that the *Brown* court declined to address.[10]

---

**10.** The Alabama Supreme Court has also answered the open question in *Brown* 's footnote, concluding that the Alabama wrongful death statute is consistent with federal law even when it bars municipal liability under § 1983. *Carter v. City of Birmingham,* 444 So.2d 373 (Ala.1983), *cert. denied,* 467 U.S. 1211, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984). The *Carter* court noted that recovery could be had against municipalities for wrongful death under Alabama tort law, even if recovery was barred under federal law. *Id.* at 379. Thus, the court concluded that policies underlying § 1983 would not be undermined, but would be vindicated by state law.

This Court cannot agree that the existence of state tort remedies can justify the barring of relief under § 1983. In describing the purpose

for the passage of § 1983, the Supreme Court of the United States has stated:

It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.

*Monroe v. Pape,* 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492, 501 (1961). The *Monroe* Court further stated that "[i]t is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is

Other cases, however, directly support the conclusions reached in the case at bar. A number of other courts have held that restrictions on recoverable damages in state wrongful death and survival statutes are inconsistent with federal law and therefore not applicable in § 1983 actions. *See McFadden v. Sanchez*, 710 F.2d 907 (2d Cir.) (refusing to apply New York survival statute's limitation on the recovery of punitive damages for death of decedent), *cert. denied*, 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983); *Heath v. City of Hialeah*, 560 F.Supp. 840 (S.D.Fla.1983) (refusing to apply Florida statute's ban on the recovery of decedent's damages); *Sager v. City of Woodland Park*, 543 F.Supp. 282 (D.Colo.1982) (refusing to apply restrictions on recoverable damages in Colorado statutes); *O'Connor v. Several Unknown Correctional Officers*, 523 F.Supp. 1345 (E.D. Va.1981) (refusing to apply the Virginia wrongful death statute's bar on recovery of decedent's damages or punitive damages). In holding that damage restrictions of the New York survival statute were inconsistent with federal law within the meaning of § 1988, the *McFadden* court stated:

> [W]e have no doubt that limitations in a state survival statute have no application to a section 1983 suit brought to redress a denial of rights that caused the decedent's death.... To whatever extent section 1988 makes state law applicable to section 1983 actions, it does not require deference to a survival statute that would bar or limit the remedies available under section 1983 for unconstitutional conduct that causes death.

710 F.2d at 911 (citations omitted). Similarly, the *Sager* court, which was cited by the plaintiff in the present action, summarized its decision by stating:

[B]oth §§ 1983 and 1988 mandate dissuasion of the state law damage restrictions in the instant case.... [T]he state law damage restrictions must be disregarded because their application would be inconsistent with the purposes and policies underlying § 1983 and therefore, "inconsistent with federal law" pursuant to § 1988. Reliance on the Colorado wrongful death damage rules would undermine the compensation rationale underlying § 1983 since it would limit and "preclude recovery by survivors suing in their own interest." Since the allegedly unconstitutional conduct caused the decedent's death, application of Colorado survival and wrongful death damage rules would undermine the deterrence goals of § 1983."

543 F.Supp. at 296–97.

Additionally, the Supreme Court's decision in *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), provides support by analogy for the decision made in this action. *Carlson* involves a *Bivens* action [11] for the wrongful death of a federal prisoner whose eighth amendment rights to obtain proper medical attention were allegedly violated. The *Carlson* Court held that a uniform federal rule of survivorship should be applied in *Bivens* actions. *Id.* at 23, 100 S.Ct. at 1474, 64 L.Ed.2d at 26. In distinguishing the *Robertson* Court's decision to apply the Louisiana survivorship law, the *Carlson* Court stated:

[In *Robertson v. Wegmann*] the plaintiff's death was not caused by the acts of the defendants upon which the suit was based. Moreover, *Robertson* expressly recognized that to prevent frustration of the deterrence goals of § 1983 (which in part also underlie *Bivens* actions ...) "[a] state official contemplating illegal activity must always be prepared to face

---

invoked." *Id.* at 183, 81 S.Ct. at 482, 5 L.Ed.2d at 503. Thus, even if Alabama tort law does provide adequate remedies for violations of federal rights, the victims are still entitled to pursue their remedies in federal court under § 1983.

**11.** The Court in *Bivens* established an implied right of action for damages in federal court

against federal officials who violate the constitutional rights of private citizens. *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* provides the same type of action against federal officials that § 1983 provides against state and local officials.

the prospect of a § 1983 action being filed against him."

*Id.* at 24–25, 100 S.Ct. at 1474–75, 64 L.Ed.2d at 27–28 (footnote omitted). Thus, even though the *Carlson* Court's decision was not controlled by § 1988, many of the policy reasons for declining to apply state survival law in *Bivens* actions are also applicable by analogy to § 1983 actions.

This Court therefore holds that, in actions under § 1983, where the liability of a municipality, county, or other local governmental entity is at issue, and where the alleged unconstitutional acts result in the death of the victim, the Alabama wrongful death act should be applied only to the extent that the decedent's action is permitted to survive. The wrongful death statute should not be held to foreclose the recovery of compensatory damages against the governmental entity in question, for such a result would be inconsistent with the policies underlying § 1983. In the case at bar, this Court will permit plaintiff to recover compensatory damages from Baldwin County and its commissioners in their official capacity if their liability under § 1983 can be established.[12]

■ The compensatory damages awarded shall be measured by the losses incurred by the decedent's survivors who are entitled to recover under Alabama's statute of distributions as a result of his death. Such losses may include, but are not restricted to, expenses incurred in the treatment or burial of the decedent, loss of income from the decedent, loss of companionship and consortium, and pain and suffering of the survivors. Such damages should adequately compensate the survivors as required by *Robertson* and should also serve as an adequate deterrent to future governmental misconduct. This Court sees no reason, however, to award compensatory damages for the decedent's claims. Obviously, the

decedent cannot be compensated at this point and such damages are not necessary to compensate his survivors.

For the foregoing reasons, the motion to dismiss the claims against the commissioners because no relief can be granted against them is DENIED.

## IV. MOTION TO STRIKE CLAIMS FOR COMPENSATORY DAMAGES

Defendants have moved the Court to strike all claims for compensatory damages and all references to pain and suffering, because the Alabama wrongful death statute permits only the recovery of punitive damages. Since this Court may ultimately permit plaintiff to recover compensatory damages from Baldwin County and its commissioners in their official capacity, however, the motion to strike is DENIED.

## V. MOTION TO DISMISS THE CIVIL CONTEMPT CLAIM

■ Finally, defendants have moved this Court to dismiss plaintiff's request that defendants be held in civil contempt for the alleged violation of an injunction issued by this Court. The injunction was issued by Judge Emmett R. Cox on November 2, 1983 in *Thames v. Baldwin County*, Civil Action No. 81–0778–C. Defendants argue that plaintiff was not a party to the action in which the injunction was issued and therefore lacks standing to institute a civil contempt proceeding for a violation of the injunction.

Normally, civil contempt proceedings may be instituted only by parties to the proceeding in which the injunction was issued. *See, Hutto v. Finney*, 437 U.S. 678, 691, 98 S.Ct. 2565, 2574, 57 L.Ed.2d 522, 534 (1978); *Gompers v. Bucks Stove & Range Company*, 221 U.S. 418, 444–45, 31 S.Ct. 492, 499, 55 L.Ed. 797, 807 (1911);

---

**12.** This Court is permitting the recovery of compensatory damages only against counties or municipalities or other local governmental entities within the meaning of *Monell.* The Court is not overruling the application of the Alabama Statute's restriction on the recovery of compensatory damages with respect to individual defend-

ants in § 1983 actions. That issue is not before the Court. Moreover, there is no evidence that the recovery of punitive damages against individual defendants under the Alabama statute would be inadequate to satisfy the deterrent and compensatory policies underlying § 1983.

*Northside Realty Associates, Inc. v. United States,* 605 F.2d 1348, 1356 n. 22 (5th Cir.1979); *Clark v. Boynton,* 362 F.2d 992 (5th Cir.1966). Contrary to defendants' assertion, however, it appears that the decedent was a party to the *Thames* action. *Thames,* which was consolidated with *Riddle v. Baldwin County,* Civil Action No. 81–0777–C, was a class action. The court certified the class of "all persons presently confined in the Baldwin County Jail and all persons who will in the future be confined in the Baldwin County Jail." Order of May 21, 1982. Thus, the decedent, who was confined in that jail from March 25, 1985 until September 10, 1985, was a member of the certified class and was therefore a party to the earlier action. Therefore, plaintiff has standing to initiate a civil contempt proceeding for a violation of the injunction issued in *Thames.* The motion to dismiss plaintiff's civil contempt claim is DENIED.

### CONCLUSION

This Court's holdings in this order can be summarized as follows:

1. The motion to strike fictitious parties is GRANTED.

2. The motion to dismiss the claims under 42 U.S.C. § 1985 is GRANTED.

3. The motions to dismiss the Baldwin County commissioners are DENIED.

4. The motion to strike claims for compensatory damages is DENIED.

5. The motion to dismiss the civil contempt claim is DENIED.

It is so ORDERED.